## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

RIVERKEEPER, INC.,
                    PLAINTIFF,

v.


TCI OF NY, LLC; TCI OF NY INTERNATIONAL INC.;
BRIAN HEMLOCK,
                    DEFENDANTS.


-------------------------------------------------------------------

Case No. <u>1:20-cv-1023 (MAD</u>/DJS)

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF AND
CIVIL PENALTIES**

(Federal Water Pollution Control
Act, 33 U.S.C. §§ 1251 to 1387)

Plaintiff Riverkeeper, Inc. by and through its counsel, hereby alleges:

## I.

## INTRODUCTION

1.      This is a civil suit brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1387, commonly known as the Clean Water Act ("CWA" or "the Act"), to address and abate Defendant's ongoing and continuous violations of the Act pursuant to the Act's citizen suit enforcement provisions at CWA Section 505, 33 U.S.C. § 1365.

2.      TCI of NY, LLC; TCI of NY International Inc.; and Brian Hemlock (collectively, "Defendants") discharge polluted stormwater runoff from their recycling activities, which are primarily conducted at the TCI facility located at 99 Coeymans Industrial Park Lane, Ravena, NY 12045  (the "Facility") into the waters of the United States in violation of CWA Sections 301(a) and 402(p), 33 U.S.C. §§ 1311(a), 1342(p), and the New York State Department of Environmental Conservation SPDES Multi-Sector General Permit for Stormwater Discharges

1

Associated with Industrial Activity, Permit No. GP-0-17-004 (March 1, 2018),

https://www.dec.ny.gov/docs/water_pdf/msgppermit.pdf ("General Permit").

3.     Defendants violate CWA Sections 301(a) and 402(p), 33 U.S.C. §§ 1311(a),

1342(p), and the General Permit by failing to maintain and implement an adequate Stormwater

Pollution Prevention Plan ("SWPPP") and failing to adhere to adequate stormwater pollution

prevention and management practices.  Furthermore, because Defendants have not implemented

an adequate SWPPP and stormwater pollution prevention and management practices, they were

never eligible for coverage under the General Permit.  Thus, Defendants also violate CWA

Sections 301(a) and 402(p), 33 U.S.C. §§ 1311(a), 1342(p), and the General Permit by

discharging polluted industrial stormwater without authorization under a valid NPDES permit to

Coeymans Creek and one of its unnamed tributaries, and from there to the Hudson River.

4.     Stormwater runoff is one of the most significant sources of water pollution in the

nation—comparable to, if not greater than, contamination from industrial and sewage sources.

With every rainfall event, hundreds of millions of gallons of polluted rainwater pour into the

Hudson River and its tributaries. The State of New York has designated as "impaired" more than

7,000 river miles; 319,000 acres of larger waterbodies; 940 square miles of harbors, bays, and

estuaries; 10 miles of coastal shoreline; and 592 miles of Great Lakes shoreline.  Under the

Clean Water Act, "impaired" means not meeting water quality standards and/or unable to support

beneficial uses, such as fish habitat and water contact recreation.  In many of these waters, state

water quality standards for metals, oil and grease, nutrient enrichment and oxygen depletion,

inorganic pollutants, pathogens, taste, color, odor, and other parameters are consistently

exceeded.  For the overwhelming majority of water bodies listed as impaired, stormwater runoff

is cited as a primary source of the pollutants causing the impairment.

5.      Defendants' stormwater discharges contribute to this endemic stormwater pollution problem.  Defendants engage in industrial activities such as recycling of electrical transformers, substation dismantling, used oil collection, and related activities at their Facility. As precipitation comes into contact with pollutants generated by these industrial activities, it conveys those pollutants to nearby surface waters.  Contaminated stormwater discharges such as those from the Facility can and must be controlled to the fullest extent required by law to allow these water bodies a fighting chance to regain their health.

## II.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the parties and this action pursuant to CWA Section 505(a)(1) (the citizen suit provision of the CWA), 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

7.      On March 17, 2020, Plaintiff provided notice of Defendants' violations of the Act and of its intention to file suit against Defendants to Defendants, the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region II; and the Commissioner of the New York Department of Environmental Conservation ("DEC"), as required by the Act under CWA Section 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A), and the corresponding regulations at 40 C.F.R. §§ 135.1 to 135.3. A true and correct copy of Plaintiff's notice letter is attached as Exhibit A and is incorporated herein by reference.

8.      More than sixty days have passed since the notice letter was served on Defendants and the state and federal agencies. Plaintiff has complied with the Act's notice requirements under CWA Section 505(b)(1), 33 U.S.C. § 1365(b)(1).

9.      Neither the EPA nor the State of New York has commenced or is diligently

prosecuting a civil or criminal action to redress the violations alleged in this complaint. *See* CWA § 505(b)(1)(B), 33 U.S.C. § 1365(b)(1)(B).

10.     This action is not barred by any prior administrative penalty under CWA Section 309(g), 33 U.S.C. § 1319(g).

11.     Venue is proper in the United States District Court for the Northern District of New York pursuant to CWA Section 505(c)(1), 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b)(2) because the source of the violations complained of is located, and the acts and omissions giving rise to the claims occurred, within this judicial district.

### III.

### PARTIES

12.     Plaintiff Riverkeeper, Inc. ("Riverkeeper") is a non-profit corporation, whose mission is to protect, preserve, and restore the ecological integrity and productivity of the Hudson River through enforcement, field work, and community action.  Riverkeeper has approximately 3,100 members in the New York and New Jersey region, many of whom use and enjoy the Hudson River and its tributaries—including Coeymans Creek, which is polluted by industrial stormwater runoff from the Defendants' recycling center.

13.     Plaintiff's members use and enjoy the waters which Defendants have unlawfully polluted and are unlawfully polluting.  Plaintiff's members use those areas to fish, sail, boat, kayak, swim, birdwatch, photograph, view wildlife, engage in spiritual reflection, and engage in nature and scientific study, among other activities.  Defendants' discharges of stormwater associated with industrial activity containing pollutants impair each of those uses.  Thus, the interests of Plaintiff's members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the CWA.

14.     The relief sought herein will redress the harms to Plaintiff and its members caused by Defendants' activities.  Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff and its members, for which harm they have no plain, speedy, or adequate remedy at law.

15.     Plaintiff is informed and believes, and thereupon alleges, that Defendant TCI of NY, LLC is a limited liability company incorporated under the laws of the State of New York, that owns and/or operates a recycling facility at 99 Coeymans Industrial Park Lane, Ravena, NY 12045 (the "Facility").

16.     Plaintiff is informed and believes, and thereupon alleges, that Defendant TCI of NY International Inc. is a domestic business corporation registered with New York State Department of State that owns and operates the Facility.

17.      Plaintiff is informed and believes, and thereupon alleges, that Defendant Brian Hemlock is the President and an owner of TCI of NY, LLC.

## IV.

## STATUTORY AND REGULATORY BACKGROUND

## The Clean Water Act

18.     Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  CWA § 101(a), 33 U.S.C. § 1251(a).  In furtherance of this goal, the Act provides a comprehensive approach for the regulation of pollution discharged into the waters of the United States.

19.     The CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit.  A NPDES permit requires dischargers of pollution to comply with various limitations.

20.    NPDES permits are issued by the United States Environmental Protection Agency ("EPA") or by states that have been authorized by EPA to act as NPDES permitting authorities, provided that the state permitting program ensures compliance with the procedural and substantive requirements of the CWA.  CWA § 402(b)(1), 33 U.S.C. § 1342(b)(1); 40 C.F.R. § 123.25(a).

21.    In New York, DEC has been delegated the authority to issue NPDES permits. Such state-issued permits, issued by DEC pursuant to its delegated authority from EPA under the Clean Water Act, are referred to as "SPDES" permits.

## Stormwater Permits

22.    In 1987, to better regulate pollution conveyed by stormwater runoff, Congress enacted Clean Water Act Section 402(p), 33 U.S.C. § 1342(p), entitled "Municipal and Industrial Stormwater Discharges."

23.    Pursuant to CWA Section 402(p), 33 U.S.C. § 1342(p), EPA promulgated stormwater discharge regulations at 40 C.F.R. § 122.26.

24.    In promulgating those regulations, EPA cited abundant data showing the harmful effects of stormwater runoff on rivers, streams, and coastal areas across the nation.  In particular, EPA found that runoff from industrial facilities contained elevated pollution levels and that, on an annual basis, pollutant levels in stormwater runoff can exceed by an order of magnitude the levels discharged by municipal sewage treatment plants.  55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

25.    CWA Section 402(p) and EPA's implementing regulations at 40 C.F.R. § 122.26 require NPDES permits for stormwater discharges "associated with industrial activity."

26.    40 C.F.R. § 122.26(c)(1) provides that dischargers of stormwater associated with industrial activity must apply for an individual permit, apply for a permit through a group application, or seek coverage under a general permit.

27.     40 C.F.R., § 122.26(b)(13) defines "storm water" to include stormwater runoff, snow melt runoff, and surface runoff and drainage.

28.     40 C.F.R. § 122.26(b)(14) specifies that "storm water discharge associated with industrial activity" includes stormwater discharge from facilities classified under Standard Industrial Classification ("SIC") code 5093 (scrap and waste materials). Facilities in those industrial categories must obtain NPDES permit coverage for their stormwater discharges.

29.     40 C.F.R. § 122.26(g) establishes that discharges composed entirely of stormwater are excluded from the definition of "storm water discharge associated with industrial activity" if there is "no exposure" of industrial material and activities at the facility to rain, snowmelt, or runoff.

30.     40 C.F.R. § 122.26(g)(4) explains that to qualify for this exclusion, a discharger must shelter industrial materials and activities at the facility from exposure to stormwater and must certify that there is no discharge of stormwater contaminated by exposure to industrial materials and activities anywhere on the entire facility. Among other things, the owner or operator of an industrial facility must certify that *none* of the following materials or activities are exposed to precipitation now or will be exposed to precipitation in the foreseeable future: activities involving use, storage, or cleaning of industrial machinery; areas where residuals of using, storing or cleaning industrial equipment remain; materials or residuals left on the ground or in stormwater inlets from spills/leaks; material handling equipment (except adequately maintained vehicles); no materials contained in open, deteriorated or leaking storage drums, barrels, tanks, or similar containers; and no exposure of waste material (except waste stored in covered, non-leaking containers).

## New York's General Permit for the Discharge of Stormwater Associated with Industrial Activity

31.     As a delegated state NPDES permitting agency, DEC has elected to issue a statewide general permit for industrial stormwater discharges in New York. The current version

of the General Permit came into effect on March 1, 2018. DEC also has the authority to issue SPDES permits for individual applicants.

32.     In order to discharge polluted stormwater lawfully in New York, industrial dischargers must either obtain coverage under the General Permit and comply with its terms or obtain coverage under and comply with an individual SPDES permit.

33.     To obtain coverage under the General Permit, a facility discharging stormwater associated with industrial activity is required to submit to DEC a registration form called a "Notice of Intent." General Permit, Part I.D.1.a.2.

34.     In order to comply with the General Permit, a facility owner or operator must reduce the discharge of pollution from the facility through use of the best available technology. The owner or operator also must comply with numeric effluent limitations on the quantity and concentration of pollutants discharged from the facility established in the General Permit, as well as narrative ("non-numeric") effluent limits established in the General Permit. Facility owners and operators reduce pollution and comply with effluent limitations primarily by adopting "best management practices" that reduce the discharge of polluted stormwater. Best management practices ("BMPs") include both changes to industrial practices and activities (for example, more frequent inspections and site clean ups) and structural changes to the property that prevent stormwater from coming into contact with pollutants or otherwise reduce the amount of polluted stormwater eventually discharged from the facility. In addition, the owner or operator must perform inspections, conduct monitoring and sampling, and meet other requirements of the General Permit.

35.     Before submitting a Notice of Intent to DEC, a facility discharging stormwater associated with industrial activity must first prepare, make available, and implement a Storm Water

Pollution Prevention Plan ("SWPPP"). General Permit, Part I.D.1.a.1. Among other things, the SWPPP must document the best management practices that the facility has implemented to ensure that it is reducing the discharge of pollution from the facility to the extent practicable through use of the best available technology for the industry.

### CWA Citizen Enforcement Suits

36.     Under CWA Section 505(a)(1), 33 U.S.C. § 1365(a)(1), any citizen may commence a civil action in federal court on his own behalf against any person who is alleged to be in violation of an "effluent standard or limitation" under the CWA.

37.     Such enforcement action under CWA Section 505(a), 33 U.S.C. § 1365(a), includes an action seeking remedies for an unpermitted discharge in violation of CWA Section 301, 33 U.S.C § 1311, as well as for violation of a condition of a permit issued pursuant to CWA Section 402, 33 U.S.C. § 1342.  CWA Section 505(f), 33 U.S.C. § 1365(f).

38.     Declaratory relief in such cases is authorized by 28 U.S.C. § 2201–02 (granting U.S. courts the authority to issue declaratory relief in case of actual controversy and grant further necessary relief based on such a declaration).

39.     Injunctive relief is authorized by CWA Section 505(a), 33 U.S.C. § 1365(a).

40.     Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day per violation for violations occurring before November 2, 2015 and up to $52,414 per day per violation for violations occurring after that date.  CWA §§ 309(d), 505(a), 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1–19.4.

### V.

### STATEMENT OF FACTS

### Defendants Control the Industrial Activities at the Facility

41.     On information and belief, Defendant TCI of NY, LLC was incorporated in 2006

and, since then, has operated the Facility.

42.     Defendant TCI of NY, LLC advertises itself by means of its website, https://tci-ny.com, and a sign on the premises of the Facility as the owner and operator of the Facility.

43.     On information and belief, Defendant TCI of NY International Inc. was incorporated in 2019 and, since then, has participated in operation of the Facility.

44.     On information and belief, Defendant Brian Hemlock is President and an owner of TCI of NY, LLC and is responsible for Clean Water Act compliance at the Facility.

45.     The street address of the Facility is provided in government records and online resources as 99 Coeymans Industrial Park Lane, Coeymans, NY 12045. For clarity, the Facility location can be uniquely identified as Albany County tax lot 156.-4-6.12.

46.     Because the Defendants control the industrial activities that take place at the Facility, the Defendants are responsible for managing stormwater associated with those activities at the Facility in compliance with the CWA.

47.     The Defendants are the persons, as defined by CWA Section 502(5), 33 U.S.C. § 1362(5), responsible for the violations alleged in this Complaint.

## Defendants' Industrial Activities Expose Pollutants to Stormwater

48.     Defendants' industrial activities at the Facility and nearby, in areas of the  port, include but are not limited to the collection, processing (including oil removal), and storage of waste electrical equipment and related materials (including old transformers); other oil-filled electrical equipment; substations, lead-jacketed electrical cable insulated with oiled paper; and other scrap or waste.

49.     Defendants also repair and rebuild electrical equipment, including oil-filled electrical equipment.

50.    In carrying out these activities at the Facility, Defendants store and handle materials in a manner that exposes them to precipitation and snowmelt. Moving, storing, and processing the kinds of waste materials present at the Facility, or conducting repairs on electrical equipment of this kind, may lead to the release of pollutants including: scrap metal; paint; sediment; plastic; glass; copper, lead, other metals; oil, PCBs, and hydraulic fluid; and other pollutants of concern.

51.    Defendants have exposed and continue to expose industrial pollutants to stormwater, at a minimum, by storing waste materials in uncovered dumpsters; storing transformers, transformer casings and enclosures, and other equipment outdoors; conducting teardowns or other disassembly of transformers, substations, and other industrial equipment outdoors; storing trucks and other machinery outside or otherwise exposing them to the elements; vehicles entering and leaving the Facility that track pollutants off site; and maintaining and storing machinery and related parts outside.

<u>**Defendants Discharge Polluted Stormwater From the Facility
Into Waters of the United States**</u>

52.    During precipitation events, including rainfalls and snow or ice melt events, stormwater discharges flow from the Facility into Coeymans Creek and into an unnamed tributary of Coeymans Creek via storm drains located within the industrial park in which the Facility is situated.

53.    The drains bring water into Coeymans Creek several hundred feet upstream of its junction with the Hudson River.

54.    Coeymans Creek and the Hudson River are both "waters of the United States." Defendants' industrial activity at the Facility has caused and continues to cause a "discharge of pollutants" within the meaning of CWA Section 502(12), 33 U.S.C. § 1362(12), and a

"stormwater discharge associated with industrial activity" within the meaning of 40 C.F.R.

§ 122.26(b)(14) from the Facility on at least each and every day that there has been a

precipitation event greater than 0.1 inches. EPA has determined that precipitation greater than

0.1 inches in a 24-hour period constitutes a measurable precipitation event for the purposes of

evaluating stormwater runoff associated with industrial activity. *See, e.g.*, 40 C.F.R.

§ 122.26(c)(i)(E)(6) (using 0.1 inches as the distinguishing threshold of a storm event).

<u>**Defendants have Failed to Maintain and Implement**</u>
<u>**an Adequate SWPPP and**</u>
<u>**Pollution Prevention Management Practices**</u>

55.    In 2014, Defendant TCI of NY, LLC submitted to DEC a "Conditional No

Exposure Certification," i.e. a certification that the Facility did not require a stormwater permit

because there was no exposure of pollution to stormwater at the Facility, in accordance with 40

C.F.R. § 122.26(g).

56.    On August 18, 2014, DEC acknowledged Defendants' five-year Conditional No

Exposure Certification, effective from July 11, 2014 through July 11, 2019.  The Facility was

issued the SPDES identification number NYR00F504.

57.    On July 8, 2019, Defendants filed a renewed No Exposure Certification with DEC

claiming that such exposure did not take place at the Facility. On July 11, 2019, DEC

acknowledged Defendants' No Exposure Certification, effective through July 10, 2024.

58.    As of March 17, 2020, the Facility was not covered by an individual SPDES

permit or the General Permit.

59.    As of March 17, 2020, Defendants had not filed a Notice of Intent with DEC

seeking General Permit coverage for the Facility.

60.    As of March 17, 2020, Defendants had not complied with any provisions of the General Permit and was exposing pollution to stormwater as alleged above.

61.    Accordingly, on March 17, 2020, Plaintiff sent Defendants via certified mail the notice of intent to sue described above and attached to this Complaint.

62.    In late March of 2020, Defendants submitted a Notice of Intent to obtain coverage under the General Permit to DEC.

63.    On information and belief, Defendants' Notice of Intent failed to properly identify the industrial activities occurring at the Facility and is therefore categorized under incorrect subsectors.

64.    On April 8, 2020, DEC acknowledged the Notice of Intent as complete, and determined that authorization under the General Permit would become effective on May 6, 2020 conditional upon the implementation of an adequate SWPPP.

65.    In May 2020, Plaintiff obtained a copy of the Facility's SWPPP.

66.    The Facility's SWPPP is severely flawed and substantially deficient.  Among other things, the SWPPP fails to: (1) describe the path of stormwater from all sheet flow, drains, culverts, and outfalls to receiving waterbodies, including Coeymans Creek and its tributaries; (2) adequately protect the receiving waterbodies, which are identified as federally protected riverine wetlands; (3) identify all discharge locations; (4) include and implement specific non-numeric technology-based effluent limits (best management practices and stormwater controls); (5) provide an adequate site map; (6) include a schedule for completion of proposed stormwater control structures included on the site map; or (7) provide an adequate spill containment and cleanup plan and associated training for employees.

67.    Because Defendants' SWPPP is deficient, Defendants are not maintaining and implementing adequate stormwater pollution prevention measures at the Facility.

68.    Riverkeeper is further informed and believes, and thereupon alleges, that the SWPPP as drafted is not fully implemented at the Facility.

## VI.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Failure to Develop, Implement, and Make Available an
Adequate Storm Water Pollution Prevention Plan
(Violations of CWA Sections 301(a) and 402, 33 U.S.C. §§ 1311 and 1342)**

69.    Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

70.    The General Permit, Part III, requires industrial dischargers to develop, implement, and maintain compliance with a Stormwater Pollution Prevention Plan ("SWPPP").

71.    As described in Part III.A.3 of the General Permit, the SWPPP must identify potential sources of pollution that may affect the quality of stormwater discharges associated with the discharger's industrial activity.

72.    Further, the SWPPP must describe how the discharger has implemented mandatory general and sector-specific control measures called Best Management Practices ("BMPs") to minimize the discharge of pollutants in stormwater and to assure compliance with the other terms and conditions of the General Permit, including achievement of effluent limitations.

73.    The SWPPP must address, at a minimum: (1) each of the universally applicable elements set forth in Part III.A of the General Permit; (2) each of the applicable sector-specific plan elements specified in Part VIII of the General Permit, *see* Part III.A.7; and, (3) as applicable, additional special requirements listed in Part III.D of the General Permit for

discharges through a municipal separate storm sewer or discharges to impaired waterbodies. Each of these elements also require the discharger to maintain records and documentation of compliance with each of these elements.

74.    The SWPPP must be representative of current site conditions and kept up to date. General Permit, Part III.E.

75.    The SWPPP must be signed in accordance with Appendix H.8 of the General Permit and, where the facility is active, retained on-site in accordance with Parts III.A.9 and VI.C.  General Permit, Part III.C.1.

76.    The SWPPP must be prepared and must provide for compliance with the terms of the General Permit on or before the date of submission of a Notice of Intent to be covered under the General Permit.  General Permit, Part I.D.1.a.1.

77.    Because the industrial activities carried out at the Facility are categorized in SIC Code 5093, Defendants must include the sector-specific SWPPP elements specified in Part VII of the General Permit for Sector N, in addition to the SWPPP elements set forth in Part III of the General Permit.  General Permit, Part III.A.7.

78.    Under Part III.C.2.c. of the General Permit, the owner or operator of a facility "must make a copy of the SWPPP available to the public within fourteen (14) days of receipt of a written request."

79.    Defendants have failed, and continue to fail, to develop, implement, and maintain compliance with and make available an adequate SWPPP for the Facility as required by the General Permit and to take the other SWPPP-related actions required by the General Permit and described herein.

80.     Defendants' ongoing failure to develop and implement an adequate SWPPP for the Facility and to take the other SWPPP-related actions required by the General Permit is also evidenced by Defendants' failure to implement adequate control measures and BMPs, as set forth below.

81.     Each and every day on which Defendants fail to comply with the General Permit's SWPPP requirements is a separate and distinct violation of CWA Sections 301(a) and 402, 33 U.S.C. §§ 1311(a) and 1342.

82.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

83.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**Failure to Implement Adequate Control Measures and Best Management Practices**
**(Violations of CWA Sections 301(a) and 402, 33 U.S.C. §§ 1311 and 1342)**

84.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

85.     The General Permit, Parts II.D and VII, requires Defendants to implement mandatory general and sector-specific BMPs in order to minimize the discharge of pollutants from the Facility.

86.     The selected measures must reduce the discharge of pollution from the Facility through use of the best available technology for the industry in order to comply with both numeric and narrative effluent limits contained in the permit.

87.     For example, the General Permit, Part II.A, requires Defendants to minimize the exposure of pollutants to stormwater at the Facility and—to the extent pollutants are exposed to

stormwater despite Defendants' best efforts—to minimize the ultimate discharge of those pollutants in stormwater from the Facility.

88.    Under the General Permit, Part II, the term "minimize" means to "reduce and/or eliminate to the extent achievable using control measures (including Best Management Practices (BMPs) selected and designed in accordance with Part II.D) that are technologically available and economically practicable and achievable in light of best industry practice."

89.    To "minimize" the discharge of pollutants as required by the General Permit, the facility's BMPs must meet the Clean Water Act standards of Best Available Technology Economically Achievable ("BAT" or "BATEA") or Best Conventional Pollutant Control Technology ("BCT"), depending upon the type of pollutant being discharged.  CWA § 301(b)(2)(A), (E), 33 U.S.C. § 1311(b)(2)(A), (E).

90.    Because the industrial activities carried out at the Facility are categorized in SIC Code 5093, Defendants must implement the sector-specific control measures specified in Part VII of the General Permit for Sector N.  Specifically, because the Defendants' operations include collection and storage of non-liquid scrap as well as large amounts of fluids, Defendant must implement the sector-specific control measures specified for Subsectors N-3 and N-5.

91.    Plaintiff is informed and believes, and thereupon alleges that, as of the filing date of this complaint, Defendants have not implemented adequate control measures or BMPs required by the General Permit.

92.    Defendants have failed, and continue to fail, to implement adequate control measures and BMPs at the Facility as required by the General Permit.

93.    Defendants' ongoing failure to implement adequate control measures and BMPs at the Facility is evidenced by: (a) storing waste materials in uncovered dumpsters;

(b) Defendants' outdoor storage of transformers, transformer casings and enclosures, and other equipment without covering otherwise limiting contact with stormwater; (c) Defendants' continued tracking of waste onto public streets from the operation and maintenance of vehicles at the site, including trucks and heavy machinery; and (d) Defendants' failure to either treat stormwater prior to discharge or to implement effective stormwater containment practices.

94.     Each and every day on which Defendants fail to comply with the General Permit's control measure and BMP requirements is a separate and distinct violation of CWA Sections 301(a) and 402, 33 U.S.C. §§ 1311(a) and 1342.

95.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

96.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
**Failure to Obtain Valid NPDES Permit Coverage**
**(Violations of CWA Sections 301(a) and 402, 33 U.S.C. §§ 1311 and 1342)**

97.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

98.     40 C.F.R. § 122.26(c)(1) and 122.26(e)(1) require dischargers of stormwater associated with industrial activity to apply for an individual permit or seek coverage under a promulgated stormwater general permit by October 1, 1992.

99.     Since at least 2006, Defendant TCI of NY, LLC has operated and continues to operate a facility that engages in "industrial activity" as that term is defined in 40 C.F.R. § 122.26(b)(14).

100.     Since that time, Defendants have routinely discharged polluted stormwater associated with industrial activity from the Facility to waters of the United States.  Therefore, Defendants have been obligated to apply for coverage under an individual or general NPDES permit.

101.    From 2006 through April 8, 2020, Defendants discharged polluted stormwater associated with industrial activity to waters of the United States without seeking coverage under the General Permit.

102.    Effective May 6, 2020, DEC purportedly authorized coverage under the General Permit conditioned upon the implementation of an adequate SWPPP.

103.    But since the Facility's SWPPP is substantially deficient and Defendants have not implemented adequate BMPs at the Facility, the Facility is ineligible for coverage under the General Permit.  General Permit, Part I.D.1.a.1.

104.    In addition, the area for which Defendants sought permit coverage from DEC consists of the Facility, but not the additional areas at the port at which Defendants engage in industrial activities.  Thus, Defendants have not sought or obtained permit coverage for all of their discharges of stormwater associated with industrial activities.

105.    Accordingly, as of the date of filing of this complaint, the Facility lacks valid permit coverage under the General Permit or another SPDES permit, and discharges polluted industrial stormwater to Coeymans Creek without authorization under the Clean Water Act.

106.    Defendants continue to expose pollutants to stormwater at the Facility in a number of ways, including by: storing waste materials in uncovered dumpsters; storing transformers, transformer casings, and other equipment outside of the roofed structures throughout the facility; storing industrial and mechanical equipment outdoors; and conducting teardowns or other disassembly of transformers, substations and other equipment outdoors.

107.    Therefore, Riverkeeper is informed and believes, and thereupon alleges, that Defendants have been and are discharging polluted stormwater associated with industrial activity

to waters of the United States without a valid permit, in violation of CWA Sections 301(a) and 402, U.S.C. §§ 1311(a), 1342.

108.     Each and every subsequent day on which Defendants discharge stormwater associated with industrial activities without permit coverage constitutes a separate and distinct violation of CWA Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342.

109.     Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

110.     Wherefore, Plaintiff prays for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**Failure to Comply with Specific General Permit Requirements**
**Applicable to the Recycling Sector**
**(Violations of CWA Sections 301 and 402, 33 U.S.C. §§ 1311 and 1342)**

111.     Plaintiff incorporates by reference all preceding paragraphs as if set forth herein.

112.     The General Permit contains various requirements specific to recycling facilities. General Permit, Part VII.N.

113.     Defendants have failed, and continues to fail, to comply with these requirements of the General Permit that apply to all recycling facilities.

114.     To the extent that Defendants' failure to comply with these sector-specific requirements is not captured in the above Causes of Action, such failure is included here.

115.     Each and every day on which Defendants fail to comply with the General Permit's sector-specific requirements applicable to recycling facilities is a separate and distinct violation of CWA Sections 301(a) and 402, 33 U.S.C. §§ 1311(a) and 1342.

116.    Continuing commission of the acts and omissions alleged herein irreparably harms the waters of the State, Plaintiff, and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law.

117.    Wherefore, Plaintiff prays for relief as hereinafter set forth.

## VII.

## PRAYER FOR RELIEF

118.    Wherefore, Plaintiff Riverkeeper respectfully requests that this Court grant the following relief, as allowed by 33 U.S.C. § 1365(a) and 28 U.S.C. §§ 2201(a) and 2202:

a.      Declare Defendants to have violated and to be in violation of the Clean Water Act as alleged herein;

b.      Enjoin Defendants from discharging pollutants from the Facility except as authorized by and in compliance with a valid NPDES permit;

c.      Order Defendants to immediately develop and implement an adequate SWPPP, and thereafter apply for coverage under, and comply fully with all applicable requirements of, the General Permit (or an individual SPDES permit at least as stringent);

d.      Order Defendants to take appropriate actions to remediate the harm caused by their violations of the General Permit and the Clean Water Act, to the extent possible;

e.      Order Defendants to pay, jointly and severally, civil penalties, pursuant to CWA Sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a), and by 40 C.F.R. §§ 19.1–19.4;

f.      Order Defendants to pay the costs of litigation, including Plaintiff's reasonable investigative costs, attorney fees, expert witness and consultant fees, and other costs, pursuant to CWA Section 505(d), 33 U.S.C. § 1365(d); and

g.     Award any such other and further relief as this Court may deem appropriate.

Dated this 1st day of September, 2020          Respectfully submitted,

New York, New York


By:  /s/ Edan Rotenberg_____

Edan Rotenberg

Julia Muench

SUPER LAW GROUP, LLC

180 Maiden Lane, Suite 603

New York, NY 10038

*Attorneys for Plaintiff*

# EXHIBIT A

# SUPER LAW GROUP, LLC

March 17, 2020

**Via Certified Mail, Return Receipt Requested**

TCI of NY, LLC
PO Box 936
Coeymans, NY  12045

Brian Hemlock, Owner
PO Box 936
Coeymans, NY  12045

TCI of NY International Inc.
99 Coeymans Industrial Park Lane
Coeymans, NY, 12045

William J. Better, PC
1 Albany Avenue
Kinderhook, NY 12106

Re:    Notice of Violation and Intent to File Suit under the Clean Water Act

To Mr. Hemlock, et. Al,

I write on behalf of Riverkeeper, Inc. "Riverkeeper" to notify you of Riverkeeper's intent to file suit against TCI of NY, LLC, TCI of NY International, Inc., and Brian Hemlock (collectively "TCI") pursuant to Section 505(a) of the federal Clean Water Act ("CWA").[1]

Riverkeeper intends to file suit, as an organization and on behalf of adversely affected members, in the United States District Court for the Eastern District of New York seeking appropriate equitable relief, civil penalties, and other relief no earlier than 60 days from the postmark date of this letter.[2]

Riverkeeper intends to take legal action because TCI is discharging polluted stormwater from its recycling of electrical transformers, substation dismantling, used oil collection and related activities at an industrial park near the Hudson River a few dozen miles south of Albany ("the Facility"), to the waters of the United States, via the separate storm sewer system, without a permit.  This is a violation of Sections 301(a) and 402(p)(2)(B) of the Clean Water Act.[3] Further, TCI has not applied for coverage under, nor complied with the conditions of, an individual National Pollutant Discharge Elimination System ("NPDES") permit or the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit")[4] issued by the New York State Department of Environmental Conservation ("DEC"), in violation of Sections 402(p)(3)(A) and (p)(4)(A), and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).

---

[1] 33 U.S.C. § 1365(a). We refer to statutory provisions by their section in the Clean Water Act and provide the parallel citation to the United States Code only on first reference.

[2] *See* 40 C.F.R. § 135.2(a)(3)(c) (notice of intent to file suit is deemed to have been served on the postmark date).

[3] 33 U.S.C. §§ 1311(a), 1342(p)(2)(B).

[4] *SPDES Multi-Sector General Permit For Stormwater Discharges Associated With Industrial Activity*, Permit No. GP-0-17-004, N.Y. DEP'T ENVTL. CONSERVATION (Mar. 1, 2018), http://www.dec.ny.gov/chemical/9009.html [hereinafter *General Permit*].  This General Permit replaces earlier general permits for the discharge of stormwater associated with industrial activity and will expire on February 28, 2023.

Notice of Violation and Intent to File Suit
March 17, 2020
Page 2 of 14

Although TCI has filed a "certificate of no exposure" with the DEC, that filing is clearly inappropriate because, as explained below, TCI's activities expose many potential sources of pollution to stormwater. Therefore, TCI is violating the law. To come into compliance, TCI must develop a stormwater pollution prevention plan, put in place protective measures to reduce stormwater pollution, and apply to DEC for stormwater permit coverage.

The street address of the Facility is provided in government records and online resources as 99 Coeymans Industrial Park Lane, Coeymans, NY 12045. For clarity, the Facility location can be uniquely identified as Albany County tax lot 156.-4-6.12. The waters of the United States that are polluted by TCI are Coeymans Creek and the Hudson River.

# I.

# BACKGROUND

With every rainfall event, hundreds of millions of gallons of polluted rainwater pour into the Hudson River, its tributaries, and other receiving waters. The consensus among agencies and water quality specialists is that stormwater pollution accounts for more than half of the total pollution entering the marine environment each year.

DEC has designated more than 7,000 river miles, 319,000 acres of larger waterbodies, 940 square miles of bays and estuaries, and 592 miles of Great Lakes shoreline in the State as "impaired," or not meeting water quality standards, and unable to support beneficial uses such as fish habitat and water contact recreation.[5] For the overwhelming majority of water bodies listed as impaired, stormwater runoff is cited as a primary source of the pollutants causing the impairment. Contaminated stormwater discharges can and must be controlled in order to improve the quality and health of these waterbodies.

Stormwater discharges flow from the Facility into Coeymans Creek via storm drains located within the industrial park in which the Facility is situated. The drains bring water into Coeyman's creek several hundred feed upstream of its junction with the Hudson River.

DEC has classified Coeymans Creek as a class C(TS) waterbody.[6] DEC has classified the portion of the Hudson River into which Coeymans Creek flows as a class C waterbody.[7] Under New York's Water Quality Standards, a waterbody that is designated as C is meant to be suitable for fishing and for fish, shellfish and wildlife propagation and survival, as well as for primary and secondary contact recreation.[8] The New York Water Quality Standards also set numeric and narrative criteria for different water pollution parameters including dissolved oxygen, oil and grease, suspended and settleable solids, bacteria (pathogens), pH, temperature, nutrients, and others. A waterbody must meet both numeric and narrative criteria in order to

---

[5] *New York Assessment Data*, U.S. ENVT'L PROTECTION AGENCY (2012), http://ofmpub.epa.gov/waters10/attains_state.report_control?p_state=NY&p_cycle=2012&p_report_type=A.
[6] 6 N.Y.C.R.R. § 863.6.
[7] § 858.4.
[8] § 701.8.

Notice of Violation and Intent to File Suit
March 17, 2020
Page 3 of 14

support its designated uses.[9]  The additional designation "(TS)" for Coeymans Creek means that it is classified as a trout spawning water and that heightened water quality standards apply to it.[10]

The Hudson River consistently fails to meet state water quality standards for PCBs.[11]  In light of TCI's recycling and draining of transformers that can contain oils with PCBs, there is potential for TCI'S activities to expose pollutants that contribute to the ongoing impairment of the Hudson River.

## II.

## STANDARDS AND LIMITATIONS ALLEGED TO HAVE BEEN VIOLATED AND ACTIVITIES ALLEGED TO BE VIOLATIONS

### A.     TCI is discharging stormwater associated with industrial activity to waters of the United States without a permit.

The CWA prohibits the discharge of pollutants to the waters of the United States except in accordance with a valid NPDES permit.[12]  TCI's industrial activity at the Facility has caused and continues to cause a "discharge of pollutants" within the meaning of Section 502(12) of the CWA[13] and a "stormwater discharge associated with industrial activity" within the meaning of 40 C.F.R. § 122.26(b)(14) from the Facility on at least each and every day that there has been a rain event of more than 0.1 inches.[14]  The Facility has exposed and continues to expose industrial pollutants to stormwater, at a minimum, by:

- storing waste materials in uncovered dumpsters;
- storing transformers, transformer casings and enclosures, and other equipment outdoors;
- conducting teardowns or other disassembly of transformers, substations, and other industrial equipment outdoors;
- storing trucks and other machinery outside or otherwise exposing them to the elements;
- vehicles entering and leaving the Facility that track pollutants off site;
- maintaining and storing machinery and related parts outside.

During precipitation events (including runoff from rainfall and snow or ice melt events), pollutants are carried away from the Facility in stormwater discharges.

TCI's activities at the Facility include but are not limited to the collection, processing (including oil removal), and storage of: waste electrical equipment and related materials

---

[9] 6 N.Y.C.R.R. §§ 702, 703.
[10] §§ 701.25, 863.3(h).
[11] *Section 303(d) List of Impaired Waters Requiring a TMDL/Other Strategy*, N.Y. DEP'T ENVTL. CONSERVATION, 20 (Nov. 2016), https://www.dec.ny.gov/docs/water_pdf/303dListfinal2016.pdf [hereinafter *303(d) List*].
[12] CWA §§ 301(a), 402.
[13] 33 U.S.C. § 1362(12).
[14] EPA has determined that precipitation greater than 0.1 inches in a 24-hour period constitutes a measurable precipitation event for the purposes of evaluating stormwater runoff associated with industrial activity.  *See, e.g.*, 40 C.F.R. § 122.26(c)(i)(E)(6) (using 0.1 inches as the distinguishing threshold of a storm event).

Notice of Violation and Intent to File Suit
March 17, 2020
Page 4 of 14

(including old transformers); other oil-filled electrical equipment; substations, lead-jacketed electrical cable insulated with oiled paper; and other scrap or waste. TCI also repairs and rebuilds electrical equipment, including oil-filled electrical equipment.

In carrying out these activities at the Facility, TCI stores and handles materials in a manner that exposes them to precipitation and snowmelt. Moving, storing, and processing the kinds of waste materials present at the Facility, or conducting repairs on electrical equipment of this kind, may lead to the release of pollutants including: scrap metal; paint; sediment; plastic; glass; copper, lead, other metals; oil, PCBs, and hydraulic fluid; and other pollutants of concern.

Polluted stormwater discharges flow from the Facility into storm drains that discharge directly into Coeymans Creek, which then drains into the Hudson River. Both Coeymans Creek and the Hudson River are "water[s] of the United States," as defined in 40 C.F.R. § 122.2 and, therefore, "navigable water[s]" as defined in Section 502(7) of the CWA. TCI does not have a NPDES permit for these discharges of pollutants. Thus, TCI is discharging polluted industrial stormwater without the permit required under Sections 301 and 402 of the CWA.

**B.     TCI has improperly certified that there is "no exposure" of pollutants at the Facility instead of obtaining the required permit coverage.**

Federal regulations create a narrow "conditional exclusion" from the requirement that industrial dischargers obtain NPDES permit coverage. 40 C.F.R. § 122.26(g) establishes that discharges composed entirely of stormwater are excluded from the definition of "storm water discharge associated with industrial activity" if there is "no exposure" of industrial material and activities at the industrial facility to rain, snowmelt, or runoff.[15]

To qualify for this exclusion, a discharger must shelter industrial materials and activities at the facility from exposure to stormwater and must certify that there is no discharge of stormwater contaminated by exposure to industrial materials and activities anywhere on the entire facility.[16] Among other things, the owner or operator of an industrial facility must certify that *none* of the following materials or activities are exposed to precipitation now or will be exposed to precipitation in the foreseeable future:

- activities involving use, storage, or cleaning of industrial machinery;
- areas where residuals of using, storing or cleaning industrial equipment remain;
- materials or residuals left on the ground or in stormwater inlets from spills/leaks;
- material handling equipment (except adequately maintained vehicles);
- no materials contained in open, deteriorated or leaking storage drums, barrels, tanks, or similar containers; and
- no exposure of waste material (except waste stored in covered, non-leaking containers).[17]

---

[15] *See also* 6 N.Y.C.R.R. § 750-1.5(a)(10) (absent special circumstances New York only requires permits for stormwater discharges already subject to federal regulation).

[16] *See* 40 C.F.R. 122.26(g)(1), (4).

[17] 40 C.F.R. § 122.26(g)(4); *see also No Exposure Certification for Exclusion from SPDES Storm Water Permitting*, DEP'T ENVTL. CONSERVATION, http://www.dec.ny.gov/docs/water_pdf/noexposure.pdf (state-issued form of certificate consistent with 40 C.F.R. § 122.26(g)(4)).

Notice of Violation and Intent to File Suit
March 17, 2020
Page 5 of 14

TCI exposes pollutants to stormwater at the Facility in a number of ways, including by: storing waste materials in uncovered dumpsters; storing transformers, transformer casings, and other equipment outside of the roofed structures throughout the facility; storing industrial and mechanical equipment outdoors, and conducting teardowns or other disassembly of transformers, substations and other equipment outdoors.  These activities render TCI ineligible for exclusion from stormwater permitting on the basis of "no exposure" because these activities constitute:

- using, storing, or cleaning industrial machinery or equipment in areas exposed to stormwater;
- keeping materials or products from past industrial activity in areas exposed to stormwater;
- storing materials or products outdoors; and
- keeping materials and wastes in open or uncovered containers.

On June 27, 2014, TCI submitted to DEC a "No Exposure Certification for Exclusion from SPDES Storm Water Permitting."  On August, 16, 2019, TCI submitted to DEC a renewal of the "No Exposure Certification for Exclusion from SPDES Storm Water Permitting."  For the reasons above, these submissions were improper and do not excuse TCI from its obligation to obtain NPDES permit coverage.

The filing of these certifications with DEC in 2014 or 2019 does not alter TCI's legal duty to obtain permit coverage or excuse TCI's past lack of coverage.  DEC acknowledged receipt of TCI's submission and confirmed to TCI that they had completed the necessary steps to *claim* a conditional exclusion from complying with the General Permit.  But DEC made it clear that the government's acknowledgement of TCI's certification "is not, however, a Department determination of the validity of the information you provided" and reminded TCI that "[a]n important aspects of this certification requires that you have correctly determined whether you are eligible for permitting exclusion under [the General Permit]."

In sum, TCI has wrongly self-certified its eligibility for a "no exposure" exclusion.  TCI's industrial activities at the Facility routinely leave pollutants exposed to stormwater, and that polluted stormwater is collected and conveyed from the Facility into Coeymans Creek and the Hudson River every time it rains.[18]

## C.    TCI is violating the Clean Water Act by failing to apply for NPDES permit coverage.

TCI is engaged in the business of recycling transformers and, therefore, is an industrial discharger with a primary Standard Industrial Classification ("SIC") Code of 5093.  Pursuant to Section 402(p) of the CWA and regulations promulgated by EPA pursuant to the CWA, TCI must apply for coverage under the General Permit or an individual NPDES permit for TCI's discharge of polluted stormwater.  In addition, TCI must apply for an individual NPDES permit if the Facility is discharging process wastewater or has any other non-stormwater discharge

---

[18] *See* Appendix I (summarizing NOAA precipitation data).

Notice of Violation and Intent to File Suit
March 17, 2020
Page 6 of 14

containing pollutants that is not authorized by the General Permit (for example, truck washwater is a non-stormwater discharge that is not eligible for coverage under the General Permit). By failing to apply for coverage under the General Permit or an individual permit, TCI is violating CWA Sections 301(a) and 402(a) and (p) and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).[19]

To be eligible to discharge under the General Permit, TCI must submit to DEC a registration form called a "Notice of Intent."[20] Notice of Intent forms are available online from DEC. TCI has failed to prepare and file a Notice of Intent or an application for an individual permit.[21]

### D.    TCI is violating the Clean Water Act by failing to comply with the General Permit.

As a discharger of stormwater associated with industrial activity, TCI must comply at all times with the requirements of the General Permit (or an individual permit).[22] By discharging stormwater associated with industrial activity without complying with the General Permit, TCI is violating CWA Sections 301(a) and 402(a) and (p).[23] The main General Permit requirements that TCI has failed and continue to fail to meet are explained further below.

#### 1.    TCI has failed to develop and implement a Stormwater Pollution Prevention Plan.

Before submitting a registration form, TCI must prepare, make available, and implement a Stormwater Pollution Prevention Plan ("SWPPP") in accordance with schedules established in the General Permit.[24] The SWPPP must identify potential sources of pollution that may affect the quality of stormwater discharges associated with industrial activity. Further, the SWPPP must describe and ensure the implementation of practices that minimize the discharge of pollutants in these discharges and that assure compliance with the other terms and conditions of the General Permit, including achievement of effluent limitations.[25]

---

[19] CWA Sections 301(a) and 402(a) and (p) make it unlawful for TCI to discharge stormwater associated with industrial activity without obtaining a NPDES permit. 40 C.F.R. Sections 122.26(c)(1) and (e)(1) require TCI to apply for a NPDES permit that covers its discharge of stormwater associated with industrial activity.

[20] *General Permit*, *supra* note 4, Part I.D.2. In notifying TCI that the Clean Water Act requires coverage under and compliance with a valid NPDES permit in order to lawfully discharge, and that submission of a Notice of Intent to DEC is required in order to obtain coverage under the General Permit, Riverkeeper does not concede that all of the activities conducted at the Facility are necessarily eligible for coverage under that permit. For example, if the Facility is discharging process wastewater, such as wash water, or has any other polluted non-stormwater discharge that is not authorized by the General Permit, then an individual NPDES permit is required and the failure to obtain and comply with an individual NPDES permit for such discharges also violates CWA §§ 301(a) and 402(p). The conditions for eligibility to discharge under the General Permit are provided in Part I.C of the permit.

[21] A thorough search of EPA's Enforcement & Compliance History Online ("ECHO") database and DEC's records reveals that no Notice of Intent has been submitted for the Facility.

[22] This section discusses the compliance requirements of the General Permit. If TCI elects to seek coverage under an individual NPDES permit instead, the conditions of that individual permit will be at least as strict as those of the General Permit, thus TCI will still be required to comply with these requirements.

[23] Sections 301(a) and 402(a) and (p) make it unlawful for TCI to discharge stormwater associated with industrial activity without first complying with the conditions established in a NPDES permit.

[24] *General Permit*, *supra* note 4, Part III.C.

[25] *Id.*, Part III.A.

Notice of Violation and Intent to File Suit
March 17, 2020
Page 7 of 14

Among other things, the SWPPP must include: a general site description, a general location map identifying the location of the facility and all receiving waters to which stormwater discharges, information related to a company stormwater pollution prevention team, a summary of potential pollutant sources, a description of control measures and best management practices, and schedules and procedures for implementation of control measures, monitoring and inspections.[26]

TCI has failed to develop and implement a legally compliant SWPPP, as required by Part III of the General Permit.[27]

### 2.  TCI has failed to implement control measures and Best Management Practices that are selected to meet best available technology standards.

TCI cannot legally discharge stormwater under the General Permit until it implements mandatory general and sector-specific control measures called Best Management Practices ("BMPs") in order to minimize the discharge of pollutants from the Facility.[28]  The selected measures must reduce the discharge of pollution from the Facility to the extent practicable through use of the best available technology for the industry.

"Effluent limits are required to *minimize* the *discharge* of pollutants.[29]  The General Permit's effluent limits include both numeric limits specific to certain sectors,[30] as well as non-numeric technology-based effluent limits that apply to all facilities.[31]  These non-numeric technology-based restrictions include minimizing the exposure of pollutants to stormwater[32] and minimizing the discharge of pollutants in stormwater[33] "to the extent achievable using *control measures* [including best management practices] that are technologically available and economically practicable and achievable in light of best industry practice."[34]

TCI has not minimized the discharge of pollution to the extent achievable by implementing control measures or BMPs that are technologically achievable and economically practicable and achievable in light of best industry practice, as required by Parts I.B.1 and VII of the General Permit.

---

[26] *General Permit*, *supra* note 4, Part III.A.
[27] On information and belief, no SWPPP exists.  If a SWPPP exists, then it is either facially inadequate or has not been fully and adequately implemented.
[28] *General Permit*, *supra* note 4, Part II.A.D; *see also id.* Part VII (setting forth sector-specific control measures).
[29] *Id.*, Part II.
[30] *Id.*, Part VII.
[31] *Id.*, Part II.
[32] *Id.*
[33] *Id.*
[34] *Id.*

Notice of Violation and Intent to File Suit
March 17, 2020
Page 8 of 14

3. **TCI has failed to conduct routine site inspections and comply with monitoring, recordkeeping, and reporting requirements.**

TCI must conduct an annual comprehensive site inspection and evaluation of areas where industrial materials or activities are exposed to precipitation or where spills and leaks have occurred within the past three years.[35] The inspection must ensure that all stormwater discharges are adequately controlled and that all BMPs are functioning as expected.[36]

In addition, qualified facility personnel must carry out routine inspections at least quarterly.[37] During these inspections, personnel must evaluate conditions and maintenance needs of stormwater management devices, detect leaks and ensure the good condition of containers, evaluate the performance of the existing stormwater BMPs described in the SWPPP, and document any deficiencies in the implementation and/or adequacy of the SWPPP.[38] Such deficiencies must then be addressed through corrective actions in accordance with Part V of the General Permit.

The General Permit requires that all covered facilities conduct multiple types of analytical monitoring, and DEC may require additional individualized monitoring as well.[39] In particular, all facilities authorized under the General Permit must:

- collect and analyze stormwater samples for each outfall at least semi-annually.[40]
- conduct visual monitoring of stormwater discharges at least quarterly;[41]
- perform an annual dry weather inspection to detect non-stormwater discharges;[42]
- inspect, sample and monitor discharges from coal pile runoff;[43]
- inspect, sample and monitor or discharges from secondary containment structures and transfer areas;[44]
- document storm events during which any samples are taken;[45]
- keep records of the monitoring with the Facility's SWPPP;[46] and
- submit an annual report to DEC accompanied by a Discharge Monitoring Report detailing the results of any required stormwater samples, as well as reports that documents any instance of non-compliance with benchmarks or numeric effluent limitations.[47]

---

[35] *General Permit*, *supra* note 4, Part IV.A.1
[36] *Id.*
[37] *Id.*, Part IV.B.
[38] *Id.*
[39] *Id.*, Part IV.F.1, 2.
[40] *Id.*, Part IV.B.1.c.
[41] *Id.*, Part IV.B.1.a.
[42] *Id.*, Part IV.C.
[43] *Id.*, Part IV.F.1.
[44] *Id.*, Part IV.D.4.
[45] *Id.*, Part IV.D.3.
[46] *Id.*, Part IV.F.3.
[47] *Id.*, Part VI.

Notice of Violation and Intent to File Suit
March 17, 2020
Page 9 of 14

Because TCI is engaged in industrial activities associated with recycling under Sector N of the General Permit, it is required to sample for:

- Total Suspended Solids ("TSS");
- Chemical Oxygen Demand ("COD");
- Oil and Grease;
- Aluminum;
- Cadmium;
- Chromium;
- Copper;
- Iron;
- Lead; and
- Zinc.

Riverkeeper is not necessarily aware of all industrial activities taking place at the Facility. To the extent that industrial activities other than the above are carried out at the Facility, other sampling may be required as well.[48] This notice provides TCI with sufficient information to identify the standards and limitations that apply to all categories of industrial activity.

TCI has failed to conduct the required annual and other routine inspections, monitoring, and testing, as required by, at least, Parts IV, VI, and VII of the General Permit. TCI also has failed to retain records and submit monitoring reports to DEC pertaining to the Facility, as required by, at least, Parts IV, VI, and VII of the General Permit.

**4.  TCI has failed to comply with additional requirements located in Part VII of the General Permit.**

As noted above, the General Permit contains various requirements specific to Sector N: Scrap Recycling Facilities (SIC Code 5093).  These requirements are collected in Part VII of the General Permit.  TCI has failed to comply with these additional requirements of Part VII of the General Permit.

\*          \*          \*          \*          \*

In sum, TCI's discharge of stormwater associated with industrial activities without a permit, TCI's failure to apply for permit coverage, and TCI's failure to comply with the above-listed conditions of the General Permit (or an individual NPDES permit) constitute violations of the General Permit and of Sections 301(a) and 402(p) of the Clean Water Act.

**III.**

**PERSONS RESPONSIBLE FOR ALLEGED VIOLATIONS**

TCI of NY, LLC, TCI of NY International, Inc., and Brian Hemlock are the persons responsible for the violations alleged in this Notice.  Riverkeeper believes that TCI of NY, LLC presently has operational control over the day-to-day industrial activities at this Facility. However, on its certification of no exposure, Brian Hemlock is listed as the Owner/Operator of the Facility.  Riverkeeper therefore believes TCI of NY, LLC and/or Brian Hemlock are

---

[48] *See generally General Permit, supra* note 4, Part VII (setting forth sector-specific requirements).

Notice of Violation and Intent to File Suit
March 17, 2020
Page 10 of 14

responsible for managing stormwater at the Facility in compliance with the CWA.  Riverkeeper believes that TCI of NY International, Inc. may also be involved with ownership/operation of the Facility.  Thus, TCI of NY International, Inc. may also be responsible for managing stormwater at the Facility in compliance with the CWA.

Riverkeeper hereby puts TCI of NY, LLC, TCI of NY International, Inc., Brian Hemlock, and William J. Better (identified for delivery of service by the New York Department of State) on notice that if Riverkeeper subsequently identifies additional persons as also being responsible for the violations set forth above, Riverkeeper intends to include those persons in this action.

## IV.

## LOCATION OF THE ALLEGED VIOLATION

The violations alleged in this Notice have occurred and continue to occur at the Facility located at 99 Coeymans Industrial Park Lane, Coeymans, NY  12045. Stormwater associated with industrial activity discharges into storm sewer drains that connect to Coeymans Creek.  The failure to develop and implement pollution prevention plans and take the other required measures are violations occurring at the Facility in general and in the inadequate documents themselves.[49]

## V.

## DATES OF VIOLATION

Every day upon which TCI has failed to apply for permit coverage since TCI first commenced operations at the Facility and discharged polluted stormwater is a separate violation of Section 301(a) of the CWA and EPA's regulations implementing the CWA.[50]  TCI has discharged pollution without a permit in violation of Section 301(a) of the CWA on every day since TCI commenced operations at the Facility on which there has been a measurable precipitation event or discharge of previously accumulated precipitation (i.e., snowmelt) over 0.1 inches—at least 382 individual events from January 2015 through February 2020.[51]

---

[49] The federal courts have held that a reasonably specific indication of the area where violations occurred, such as the name of the facility, is sufficient and that more precise locations need not be included in the notice.  *See, e.g.*, *Natural Resources Defense Council v. Southwest Marine, Inc.*, 945 F. Supp. 1330, 1333 (S.D. Cal. 1996), aff'd 236 F.3d 985, 996 (9th Cir. 2000); *City of New York v. Anglebrook Ltd. Partnership*, 891 F. Supp. 900, 908 (S.D.N.Y. 1995); *United Anglers v. Kaiser Sand & Gravel Co.*, No. C 95-2066 CW, 1995 U.S. Dist. LEXIS 22449 at *4 (N.D. Cal. Sept. 27, 1995)

[50] *See also* 33 U.S.C. §§ 402(p)(3)(A) and (p)(4)(A) (requiring the establishment of industrial stormwater NPDES permits and of a permit application process).

[51] Appendix 1; *Climate Data Online Search*, Nat'l Oceanic & Atmospheric Admin., https://www.ncdc.noaa.gov/cdo-web/search (last visited Feb. 27, 2020) (providing raw NOAA data).  *See also supra*, note 14 (noting EPA uses 0.1 inches as the threshold for a measurable storm event).   Our allegations include, but are not limited to, these events, as they do not include snowmelt events.  We have included data as to the water-equivalent amount of snowfall during this period, so that an estimate of such events can be drawn.

Notice of Violation and Intent to File Suit
March 17, 2020
Page 11 of 14

Finally, if TCI seeks permit coverage after receiving this letter but fails to fully comply with the requirements of the General Permit (or an individual permit), each day upon which TCI claims coverage under a NPDES permit but fails to comply with that permit will constitute a separate day of violation with respect to each unmet condition of that permit.

TCI is liable for the above-described violations occurring prior to the date of this letter, and for every day after the date of this letter that these violations continue. In addition to the violations set forth above, this Notice covers all violations of the CWA evidenced by information that becomes available to Riverkeeper after the date of this Notice of Intent to File Suit.[52] These violations are ongoing and, barring full compliance with the permitting requirements of the Clean Water Act, these violations will continue.

## VI.

## **RELIEF REQUESTED**

Riverkeeper will ask the court to order TCI to comply with the CWA, to pay penalties, and to pay Riverkeeper's costs and legal fees.

First, Riverkeeper will seek declaratory relief and injunctive relief to prevent further violations of the Clean Water Act pursuant to Sections 505(a) and (d) and such other relief as permitted by law. Riverkeeper will seek an order from the Court requiring TCI to obtain NPDES permit coverage and to correct all other identified violations through direct implementation of control measures and demonstration of full regulatory compliance.

Second, pursuant to CWA Section 309(d),[53] each separate violation of the CWA subjects TCI to a penalty not to exceed $37,500 per day for each violation that occurred prior to November 2, 2015, and up to $52,414 per day for each violation that occurred after November 2, 2015.[54] Riverkeeper will seek the full penalties allowed by law.

Finally, pursuant to CWA Section 505(d), Riverkeeper will seek recovery of its litigation fees and costs (including reasonable attorney and expert witness fees) in this matter.[55]

---

[52] *See, e.g. Public Interest Research Grp. v. Hercules, Inc.*, 50 F.3d 1239, 1248-49 (3d Cir.1995) (a notice that adequately identifies specific violations to a potential defendant also covers repeated and related violations that the plaintiff learns of later. "For example, if a permit holder has discharged pollutant 'x' in excess of the permitted effluent limit five times in a month but the citizen has learned only of four violations, the citizen will give notice of the four violations of which the citizen then has knowledge but should be able to include the fifth violation in the suit when it is discovered.")

[53] 33 U.S.C. § 1319(d); *see also* 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).

[54] 40 C.F.R. §§ 19.2, 19.4.

[55] 33 U.S.C. § 1365(d).

Notice of Violation and Intent to File Suit
March 17, 2020
Page 12 of 14

## VII.

## PERSONS GIVING NOTICE

The full name, address, and telephone number of the persons giving notice are as follows:

Riverkeeper, Inc.
20 Secor Road
Ossining, NY 10562
(914) 478-4501
Attn: Victoria Leung

## VIII.

## IDENTIFICATION OF COUNSEL

Riverkeeper is represented by legal counsel in this matter.  The name, address, and telephone
number of Riverkeeper's attorneys are:

Edan Rotenberg, Esq.
Super Law Group, LLC
180 Maiden Lane, Suite 603
New York, New York 10013
(212) 242-2355

## IX.

## CONCLUSION

The foregoing provides more than sufficient information to permit TCI to identify the
specific standard, limitation, or order alleged to have been violated, the activity alleged to
constitute a violation, the person or persons responsible for the alleged violation, the location of
the alleged violation, the date or dates of such violation, and the full name, address, and
telephone number of the person giving notice.[56]

If TCI has developed a SWPPP, Riverkeeper requests that TCI send a copy to the
undersigned attorney.[57]  Otherwise, Riverkeeper encourages TCI to begin developing a SWPPP
immediately after receiving this letter and asks that TCI please inform the undersigned attorney

---

[56] 40 C.F.R. § 135.3(a).
[57] Note that under Part III.C.2 of the General Permit, the owner or operator of a facility "must make a copy of the
SWPPP available to the public within 14 days of receipt of a written request."

Notice of Violation and Intent to File Suit
March 17, 2020
Page 13 of 14

of TCI's efforts so Riverkeeper can work with TCI to avoid disputes over the contents of the SWPPP.[58]

      During the sixty-day notice period, Riverkeeper is willing to discuss effective remedies for the violations noted in this letter that may avoid the necessity of protracted litigation.  If TCI wishes to pursue such discussions, please contact the undersigned attorney immediately so that negotiations may be completed before the end of the sixty-day notice period.  We do not intend to delay the filing of a complaint in federal court, regardless of whether discussions are continuing at the conclusion of the sixty days.

      Very truly yours,

      Edan Rotenberg
      Super Law Group, LLC
      180 Maiden Lane, Suite 603
      New York, New York 10038
      (212) 242-2355

cc:
Andrew Wheeler, Administrator
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Peter D. Lopez, EPA Region 2 Administrator
Environmental Protection Agency
290 Broadway
New York, NY 10007-1866

Basil Seggos, Commissioner
New York State Department of Environmental Conservation
625 Broadway
Albany, NY 12233-1011

---

[58] Riverkeeper will not send a new notice letter in response to any effort TCI makes to come into compliance with the Clean Water Act after receiving this letter, for example, by developing a SWPPP.  The federal courts have held that citizens sending a notice letter are not required to identify inadequacies in compliance documents that do not yet exist and are "not required to send a second notice letter in order to pursue specific claims regarding the inadequacies of [a defendant's] post-notice compliance efforts." *WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 920 (9th Cir. 2004). *See also Natural Resources Defense Council v. Southwest Marine, Inc.,* 236 F.3d 985, 997 (9th Cir. 2000) ("subject matter jurisdiction is established by providing a notice that is adequate on the date it is given to the defendant.  The defendant's later changes . . . do not retroactively divest a district court of jurisdiction under 33 U.S.C. § 1365(b)."); *City of New York v. Anglebrook L.P.*, 891 F. Supp. 900, 908 (S.D.N.Y. 1995) (plaintiff's notice letter based on inadequacies of defendant's original SWPPP held sufficient to establish court's jurisdiction, even though defendant later prepared a revised SWPPP).

Notice of Violation and Intent to File Suit
March 17, 2020
Page 14 of 14

# APPENDIX I
# NOAA Precipitation Data

**Station Information**

| Name | Station # | Latitude | Longitude | Elevation |
|------|-----------|----------|-----------|-----------|
| Coeymans Hollow | US1NYAB0042 | 42.504078 | -73.898102 | 219.8 |
| New Baltimore | US1NYGR0005 | 42.4429425 | -73.7866275 | 12.2 |
| Ravena | US1NYAB0046 | 42.495718 | -73.821758 | 50.6 |

**Measurement Key**

| Name | Description |
|------|-------------|
| DAPR | Number of days in the MDPR |
| MDPR | Multiday precipitation total |
| PRCP | Precipitation |
| WESF | Water equivalent of snowfall |

## Appendix 1:  NOAA Precipitation Data Since 2015
## Events Exceeding 0.1 Inch

| NAME | DATE | DAPR | MDPR | PRCP | WESF |
|---|---|---|---|---|---|
| RAVENA 1.4 NNW, NY US | 2/13/2020 | | | 0.36 | 0.4 |
| RAVENA 1.4 NNW, NY US | 2/10/2020 | 3 | 0.25 | | |
| NEW BALTIMORE 0.2 SE, NY US | 2/8/2020 | | | 0.5 | |
| NEW BALTIMORE 0.2 SE, NY US | 2/7/2020 | | | 0.27 | |
| RAVENA 1.4 NNW, NY US | 2/6/2020 | | | 0.51 | 0.4 |
| RAVENA 1.4 NNW, NY US | 1/27/2020 | 2 | 0.9 | | |
| NEW BALTIMORE 0.2 SE, NY US | 1/26/2020 | | | 0.87 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/19/2020 | | | 0.22 | |
| RAVENA 1.4 NNW, NY US | 1/16/2020 | | | 0.11 | 0.1 |
| RAVENA 1.4 NNW, NY US | 1/13/2020 | 3 | 0.13 | | |
| NEW BALTIMORE 0.2 SE, NY US | 1/12/2020 | | | 0.27 | |
| RAVENA 1.4 NNW, NY US | 1/5/2020 | 5 | 0.2 | | |
| RAVENA 1.4 NNW, NY US | 12/31/2019 | 7 | 1.17 | | |
| NEW BALTIMORE 0.2 SE, NY US | 12/30/2019 | 7 | 0.76 | | |
| RAVENA 1.4 NNW, NY US | 12/18/2019 | 2 | 0.53 | | |
| NEW BALTIMORE 0.2 SE, NY US | 12/17/2019 | | | 0.23 | |
| RAVENA 1.4 NNW, NY US | 12/16/2019 | 3 | 0.7 | | |
| NEW BALTIMORE 0.2 SE, NY US | 12/15/2019 | | | 0.12 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/14/2019 | | | 0.61 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/10/2019 | | | 0.11 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/4/2019 | 7 | 1.25 | | |
| RAVENA 1.4 NNW, NY US | 12/3/2019 | 2 | 1.45 | | |
| RAVENA 1.4 NNW, NY US | 11/25/2019 | 3 | 1.16 | | |
| NEW BALTIMORE 0.2 SE, NY US | 11/24/2019 | | | 0.65 | |
| NEW BALTIMORE 0.2 SE, NY US | 11/23/2019 | | | 0.12 | |
| NEW BALTIMORE 0.2 SE, NY US | 11/20/2019 | 5 | 1.15 | | |
| RAVENA 1.4 NNW, NY US | 11/19/2019 | | | 1.11 | |
| RAVENA 1.4 NNW, NY US | 11/8/2019 | | | 0.12 | |
| RAVENA 1.4 NNW, NY US | 11/1/2019 | | | 0.93 | |
| RAVENA 1.4 NNW, NY US | 10/28/2019 | 2 | 0.92 | | |
| NEW BALTIMORE 0.2 SE, NY US | 10/27/2019 | | | 0.13 | |
| RAVENA 1.4 NNW, NY US | 10/23/2019 | | | 0.56 | |
| RAVENA 1.4 NNW, NY US | 10/18/2019 | | | 0.12 | |
| RAVENA 1.4 NNW, NY US | 10/17/2019 | | | 2.65 | |
| RAVENA 1.4 NNW, NY US | 10/8/2019 | | | 1 | |
| RAVENA 1.4 NNW, NY US | 10/4/2019 | | | 0.52 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/3/2019 | | | 0.21 | |
| RAVENA 1.4 NNW, NY US | 10/2/2019 | | | 0.24 | |
| RAVENA 1.4 NNW, NY US | 10/1/2019 | | | 0.8 | |
| RAVENA 1.4 NNW, NY US | 9/27/2019 | | | 0.28 | |
| RAVENA 1.4 NNW, NY US | 9/5/2019 | | | 0.14 | |
| RAVENA 1.4 NNW, NY US | 9/3/2019 | 4 | 0.99 | | |
| RAVENA 1.4 NNW, NY US | 8/22/2019 | 3 | 1.26 | | |
| NEW BALTIMORE 0.2 SE, NY US | 8/21/2019 | | | 0.22 | |
| RAVENA 1.4 NNW, NY US | 8/19/2019 | 7 | 1.14 | | |
| NEW BALTIMORE 0.2 SE, NY US | 8/18/2019 | | | 0.44 | |

**Appendix 1: NOAA Precipitation Data Since 2015**

**Events Exceeding 0.1 Inch**

| NAME | DATE | DAPR | MDPR | PRCP | WESF |
|------|------|------|------|------|------|
| NEW BALTIMORE 0.2 SE, NY US | 8/16/2019 | | | 0.17 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/14/2019 | | | 0.14 | |
| RAVENA 1.4 NNW, NY US | 8/12/2019 | 5 | 0.12 | | |
| RAVENA 1.4 NNW, NY US | 8/7/2019 | 2 | 0.11 | | |
| RAVENA 1.4 NNW, NY US | 8/5/2019 | 3 | 1.64 | | |
| NEW BALTIMORE 0.2 SE, NY US | 8/4/2019 | | | 0.67 | |
| RAVENA 1.4 NNW, NY US | 8/2/2019 | 10 | 0.39 | | |
| NEW BALTIMORE 0.2 SE, NY US | 8/1/2019 | | | 0.23 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/30/2019 | | | 0.15 | |
| RAVENA 1.4 NNW, NY US | 7/23/2019 | 4 | 2.25 | | |
| RAVENA 1.4 NNW, NY US | 7/18/2019 | 2 | 0.55 | | |
| RAVENA 1.4 NNW, NY US | 7/8/2019 | 3 | 0.9 | | |
| NEW BALTIMORE 0.2 SE, NY US | 7/7/2019 | | | 1.17 | |
| RAVENA 1.4 NNW, NY US | 7/1/2019 | 4 | 0.19 | | |
| RAVENA 1.4 NNW, NY US | 6/26/2019 | 2 | 0.72 | | |
| RAVENA 1.4 NNW, NY US | 6/21/2019 | | | 0.28 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/20/2019 | 6 | 0.89 | | |
| RAVENA 1.4 NNW, NY US | 6/19/2019 | | | 0.13 | |
| RAVENA 1.4 NNW, NY US | 6/17/2019 | 2 | 0.74 | | |
| RAVENA 1.4 NNW, NY US | 6/14/2019 | | | 0.21 | |
| RAVENA 1.4 NNW, NY US | 6/11/2019 | | | 1.34 | |
| RAVENA 1.4 NNW, NY US | 6/6/2019 | | | 0.62 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/3/2019 | | | 0.17 | |
| RAVENA 1.4 NNW, NY US | 6/2/2019 | 2 | 0.75 | | |
| RAVENA 1.4 NNW, NY US | 5/29/2019 | | | 0.41 | |
| RAVENA 1.4 NNW, NY US | 5/24/2019 | | | 0.3 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/23/2019 | 6 | 0.23 | | |
| RAVENA 1.4 NNW, NY US | 5/20/2019 | 3 | 0.21 | | |
| RAVENA 1.4 NNW, NY US | 5/15/2019 | | | 0.11 | |
| RAVENA 1.4 NNW, NY US | 5/14/2019 | | | 0.6 | |
| RAVENA 1.4 NNW, NY US | 5/13/2019 | 2 | 0.74 | | |
| RAVENA 1.4 NNW, NY US | 5/11/2019 | 2 | 0.32 | | |
| RAVENA 1.4 NNW, NY US | 5/6/2019 | 2 | 0.15 | | |
| NEW BALTIMORE 0.2 SE, NY US | 5/5/2019 | | | 0.11 | |
| RAVENA 1.4 NNW, NY US | 5/4/2019 | | | 0.38 | |
| RAVENA 1.4 NNW, NY US | 4/30/2019 | | | 0.12 | |
| RAVENA 1.4 NNW, NY US | 4/29/2019 | 2 | 0.71 | | |
| NEW BALTIMORE 0.2 SE, NY US | 4/27/2019 | | | 0.83 | |
| RAVENA 1.4 NNW, NY US | 4/26/2019 | 6 | 0.33 | | |
| NEW BALTIMORE 0.2 SE, NY US | 4/25/2019 | 7 | 0.91 | | |
| RAVENA 1.4 NNW, NY US | 4/20/2019 | | | 0.58 | |
| RAVENA 1.4 NNW, NY US | 4/16/2019 | | | 0.11 | |
| RAVENA 1.4 NNW, NY US | 4/15/2019 | | | 1.04 | 0 |
| RAVENA 1.4 NNW, NY US | 4/14/2019 | 2 | 0.11 | | |
| NEW BALTIMORE 0.2 SE, NY US | 4/13/2019 | | | 0.21 | |
| RAVENA 1.4 NNW, NY US | 4/10/2019 | | | 0.2 | |

## Appendix 1: NOAA Precipitation Data Since 2015
### Events Exceeding 0.1 Inch

| NAME | DATE | DAPR | MDPR | PRCP | WESF |
|------|------|------|------|------|------|
| RAVENA 1.4 NNW, NY US | 4/7/2019 | 2 | 0.16 | | |
| NEW BALTIMORE 0.2 SE, NY US | 4/6/2019 | | | 0.22 | 0.2 |
| RAVENA 1.4 NNW, NY US | 4/1/2019 | | | 0.15 | |
| NEW BALTIMORE 0.2 SE, NY US | 3/30/2019 | | | 0.11 | |
| RAVENA 1.4 NNW, NY US | 3/23/2019 | | | 0.18 | |
| RAVENA 1.4 NNW, NY US | 3/22/2019 | | | 0.41 | 0 |
| RAVENA 1.4 NNW, NY US | 3/11/2019 | 2 | 2.7 | | |
| NEW BALTIMORE 0.2 SE, NY US | 3/10/2019 | | | 0.24 | |
| RAVENA 1.4 NNW, NY US | 3/4/2019 | | | 0.24 | 0.2 |
| RAVENA 1.4 NNW, NY US | 2/28/2019 | | | 0.2 | 0.3 |
| NEW BALTIMORE 0.2 SE, NY US | 2/25/2019 | | | 0.12 | |
| RAVENA 1.4 NNW, NY US | 2/24/2019 | 2 | 0.17 | | |
| RAVENA 1.4 NNW, NY US | 2/21/2019 | 3 | 0.18 | | |
| RAVENA 1.4 NNW, NY US | 2/18/2019 | | | 0.19 | 0.2 |
| RAVENA 1.4 NNW, NY US | 2/13/2019 | | | 0.86 | 0.7 |
| RAVENA 1.4 NNW, NY US | 2/8/2019 | | | 0.2 | |
| RAVENA 1.4 NNW, NY US | 2/7/2019 | | | 0.47 | |
| RAVENA 1.4 NNW, NY US | 1/30/2019 | | | 0.55 | 0.6 |
| RAVENA 1.4 NNW, NY US | 1/25/2019 | | | 0.96 | |
| RAVENA 1.4 NNW, NY US | 1/24/2019 | | | 0.14 | |
| RAVENA 1.4 NNW, NY US | 1/22/2019 | 3 | 1.49 | | |
| NEW BALTIMORE 0.2 SE, NY US | 1/21/2019 | | | 0.41 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/20/2019 | | | 0.74 | |
| RAVENA 1.4 NNW, NY US | 1/9/2019 | | | 0.32 | |
| RAVENA 1.4 NNW, NY US | 1/7/2019 | 2 | 0.13 | | |
| RAVENA 1.4 NNW, NY US | 1/5/2019 | | | 0.36 | |
| RAVENA 1.4 NNW, NY US | 1/1/2019 | 3 | 0.49 | | |
| RAVENA 1.4 NNW, NY US | 12/22/2018 | | | 0.87 | |
| RAVENA 1.4 NNW, NY US | 12/21/2018 | | | 0.75 | |
| RAVENA 1.4 NNW, NY US | 12/17/2018 | | | 0.59 | 0.1 |
| RAVENA 1.4 NNW, NY US | 12/3/2018 | 3 | 0.51 | | |
| NEW BALTIMORE 0.2 SE, NY US | 12/2/2018 | | | 0.4 | |
| RAVENA 1.4 NNW, NY US | 11/27/2018 | | | 0.81 | 0.1 |
| RAVENA 1.4 NNW, NY US | 11/25/2018 | | | 0.44 | |
| RAVENA 1.4 NNW, NY US | 11/20/2018 | | | 0.21 | 0.2 |
| RAVENA 1.4 NNW, NY US | 11/16/2018 | | | 0.84 | |
| RAVENA 1.4 NNW, NY US | 11/14/2018 | | | 0.26 | |
| RAVENA 1.4 NNW, NY US | 11/13/2018 | 2 | 0.45 | | |
| RAVENA 1.4 NNW, NY US | 11/10/2018 | | | 0.48 | |
| RAVENA 1.4 NNW, NY US | 11/7/2018 | | | 0.3 | |
| RAVENA 1.4 NNW, NY US | 11/6/2018 | | | 0.3 | |
| RAVENA 1.4 NNW, NY US | 11/4/2018 | 2 | 1.6 | | |
| NEW BALTIMORE 0.2 SE, NY US | 11/3/2018 | | | 1.39 | |
| RAVENA 1.4 NNW, NY US | 11/2/2018 | | | 0.16 | |
| RAVENA 1.4 NNW, NY US | 10/29/2018 | 2 | 0.69 | | |
| NEW BALTIMORE 0.2 SE, NY US | 10/28/2018 | | | 1.05 | |

**Appendix 1: NOAA Precipitation Data Since 2015**

**Events Exceeding 0.1 Inch**

| NAME | DATE | DAPR | MDPR | PRCP | WESF |
|------|------|------|------|------|------|
| RAVENA 1.4 NNW, NY US | 10/17/2018 | | | 0.37 | |
| RAVENA 1.4 NNW, NY US | 10/16/2018 | | | 0.16 | |
| RAVENA 1.4 NNW, NY US | 10/13/2018 | | | 0.11 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/12/2018 | | | 0.8 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/3/2018 | | | 1.49 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/28/2018 | | | 0.35 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/27/2018 | 4 | 1.25 | | |
| NEW BALTIMORE 0.2 SE, NY US | 9/22/2018 | | | 0.11 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/19/2018 | | | 0.18 | |
| COEYMANS HOLLOW 2.1 N, NY US | 9/18/2018 | | | 2.14 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/13/2018 | | | 0.21 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/11/2018 | | | 1.28 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/7/2018 | | | 0.45 | |
| COEYMANS HOLLOW 2.1 N, NY US | 8/27/2018 | | | 0.22 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/23/2018 | 4 | 0.42 | | |
| COEYMANS HOLLOW 2.1 N, NY US | 8/22/2018 | | | 0.23 | |
| COEYMANS HOLLOW 2.1 N, NY US | 8/19/2018 | | | 0.55 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/18/2018 | | | 1.47 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/16/2018 | 6 | 1.62 | | |
| COEYMANS HOLLOW 2.1 N, NY US | 8/14/2018 | | | 0.53 | |
| COEYMANS HOLLOW 2.1 N, NY US | 8/12/2018 | | | 1.19 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/9/2018 | | | 0.21 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/8/2018 | | | 0.11 | |
| COEYMANS HOLLOW 2.1 N, NY US | 8/4/2018 | | | 2.09 | |
| COEYMANS HOLLOW 2.1 N, NY US | 8/3/2018 | | | 0.35 | |
| COEYMANS HOLLOW 2.1 N, NY US | 8/2/2018 | | | 1.83 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/29/2018 | | | 0.22 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/28/2018 | | | 0.81 | |
| COEYMANS HOLLOW 2.1 N, NY US | 7/26/2018 | | | 0.86 | |
| COEYMANS HOLLOW 2.1 N, NY US | 7/24/2018 | | | 0.96 | |
| COEYMANS HOLLOW 2.1 N, NY US | 7/23/2018 | | | 1.18 | |
| COEYMANS HOLLOW 2.1 N, NY US | 7/22/2018 | | | 0.27 | |
| COEYMANS HOLLOW 2.1 N, NY US | 7/18/2018 | | | 0.94 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/15/2018 | | | 1.1 | |
| COEYMANS HOLLOW 2.1 N, NY US | 7/7/2018 | | | 0.12 | |
| COEYMANS HOLLOW 2.1 N, NY US | 7/6/2018 | | | 0.19 | |
| COEYMANS HOLLOW 2.1 N, NY US | 6/29/2018 | | | 0.86 | |
| COEYMANS HOLLOW 2.1 N, NY US | 6/28/2018 | | | 0.29 | |
| COEYMANS HOLLOW 2.1 N, NY US | 6/25/2018 | | | 0.29 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/24/2018 | | | 0.12 | |
| COEYMANS HOLLOW 2.1 N, NY US | 6/5/2018 | | | 0.3 | |
| COEYMANS HOLLOW 2.1 N, NY US | 6/4/2018 | | | 0.21 | |
| COEYMANS HOLLOW 2.1 N, NY US | 6/1/2018 | | | 0.13 | |
| COEYMANS HOLLOW 2.1 N, NY US | 5/29/2018 | 7 | 0.33 | | |
| NEW BALTIMORE 0.2 SE, NY US | 5/28/2018 | | | 0.14 | |
| COEYMANS HOLLOW 2.1 N, NY US | 5/20/2018 | | | 0.64 | |

## Appendix 1:  NOAA Precipitation Data Since 2015
### Events Exceeding 0.1 Inch

| NAME | DATE | DAPR | MDPR | PRCP | WESF |
|------|------|------|------|------|------|
| COEYMANS HOLLOW 2.1 N, NY US | 5/16/2018 | | | 0.13 | |
| COEYMANS HOLLOW 2.1 N, NY US | 5/13/2018 | | | 0.23 | |
| COEYMANS HOLLOW 2.1 N, NY US | 5/11/2018 | | | 0.19 | |
| COEYMANS HOLLOW 2.1 N, NY US | 5/7/2018 | | | 0.39 | |
| COEYMANS HOLLOW 2.1 N, NY US | 5/5/2018 | | | 0.14 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/4/2018 | 7 | 1.17 | | |
| COEYMANS HOLLOW 2.1 N, NY US | 5/1/2018 | | | 0.16 | |
| COEYMANS HOLLOW 2.1 N, NY US | 4/30/2018 | 5 | 1.43 | | |
| NEW BALTIMORE 0.2 SE, NY US | 4/26/2018 | | | 0.37 | |
| COEYMANS HOLLOW 2.1 N, NY US | 4/25/2018 | | | 0.34 | |
| COEYMANS HOLLOW 2.1 N, NY US | 4/17/2018 | | | 1.55 | |
| COEYMANS HOLLOW 2.1 N, NY US | 4/16/2018 | 3 | 0.26 | | |
| NEW BALTIMORE 0.2 SE, NY US | 4/7/2018 | | | 0.2 | |
| COEYMANS HOLLOW 2.1 N, NY US | 4/4/2018 | | | 0.25 | |
| COEYMANS HOLLOW 2.1 N, NY US | 4/3/2018 | | | 0.15 | |
| COEYMANS HOLLOW 2.1 N, NY US | 3/28/2018 | | | 0.14 | |
| NEW BALTIMORE 0.2 SE, NY US | 3/13/2018 | | | 0.14 | 0.1 |
| COEYMANS HOLLOW 2.1 N, NY US | 3/8/2018 | | | | 1 |
| COEYMANS HOLLOW 2.1 N, NY US | 3/3/2018 | | | | 2.1 |
| NEW BALTIMORE 0.2 SE, NY US | 3/2/2018 | | | 0.75 | 0.8 |
| COEYMANS HOLLOW 2.1 N, NY US | 2/26/2018 | | | 0.38 | |
| COEYMANS HOLLOW 2.1 N, NY US | 2/25/2018 | | | 0.29 | |
| COEYMANS HOLLOW 2.1 N, NY US | 2/24/2018 | | | 0.19 | |
| COEYMANS HOLLOW 2.1 N, NY US | 2/20/2018 | | | 0.13 | |
| NEW BALTIMORE 0.2 SE, NY US | 2/8/2018 | | | 0.64 | |
| NEW BALTIMORE 0.2 SE, NY US | 2/5/2018 | | | 0.43 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/24/2018 | | | 0.6 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/23/2018 | | | 0.21 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/17/2018 | | | 0.32 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/13/2018 | | | 1.22 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/5/2018 | | | 0.18 | 0.2 |
| NEW BALTIMORE 0.2 SE, NY US | 1/3/2018 | 5 | 0.93 | | |
| NEW BALTIMORE 0.2 SE, NY US | 12/13/2017 | | | 0.18 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/12/2017 | | | 0.21 | 0.2 |
| NEW BALTIMORE 0.2 SE, NY US | 12/10/2017 | | | 0.28 | 0.3 |
| NEW BALTIMORE 0.2 SE, NY US | 12/6/2017 | | | 0.2 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/30/2017 | | | 1.5 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/25/2017 | | | 0.15 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/16/2017 | | | 0.13 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/12/2017 | | | 0.13 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/10/2017 | | | 0.11 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/9/2017 | | | 0.36 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/30/2017 | | | 0.15 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/7/2017 | | | 0.44 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/6/2017 | | | 0.33 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/4/2017 | | | 0.34 | |

## Appendix 1:  NOAA Precipitation Data Since 2015
### Events Exceeding 0.1 Inch

| NAME | DATE | DAPR | MDPR | PRCP | WESF |
|---|---|---|---|---|---|
| NEW BALTIMORE 0.2 SE, NY US | 9/3/2017 | | | 0.17 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/25/2017 | 7 | 0.92 | | |
| NEW BALTIMORE 0.2 SE, NY US | 8/15/2017 | | | 0.42 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/13/2017 | | | 0.29 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/12/2017 | | | 0.29 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/8/2017 | | | 0.65 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/25/2017 | | | 0.25 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/24/2017 | | | 0.36 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/18/2017 | | | 0.22 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/14/2017 | | | 0.23 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/13/2017 | | | 1.62 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/9/2017 | | | 0.78 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/8/2017 | | | 0.49 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/1/2017 | | | 0.76 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/28/2017 | | | 0.14 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/24/2017 | | | 0.17 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/20/2017 | 6 | 2.04 | | |
| NEW BALTIMORE 0.2 SE, NY US | 6/6/2017 | | | 1.22 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/1/2017 | | | 0.58 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/31/2017 | | | 0.12 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/30/2017 | 6 | 1.29 | | |
| NEW BALTIMORE 0.2 SE, NY US | 5/19/2017 | | | 0.39 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/14/2017 | | | 1.07 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/10/2017 | 4 | 1.19 | | |
| NEW BALTIMORE 0.2 SE, NY US | 5/6/2017 | | | 0.86 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/5/2017 | | | 0.15 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/3/2017 | | | 0.23 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/2/2017 | | | 1.7 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/26/2017 | | | 0.22 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/25/2017 | 5 | 0.65 | | |
| NEW BALTIMORE 0.2 SE, NY US | 4/20/2017 | | | 0.16 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/11/2017 | 31 | 4.57 | | |
| NEW BALTIMORE 0.2 SE, NY US | 3/7/2017 | | | 0.15 | |
| NEW BALTIMORE 0.2 SE, NY US | 2/26/2017 | | | 1.03 | 0 |
| NEW BALTIMORE 0.2 SE, NY US | 2/13/2017 | | | 0.73 | 0.7 |
| NEW BALTIMORE 0.2 SE, NY US | 2/10/2017 | | | 0.38 | |
| NEW BALTIMORE 0.2 SE, NY US | 2/9/2017 | | | 0.15 | |
| NEW BALTIMORE 0.2 SE, NY US | 2/8/2017 | | | 0.44 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/25/2017 | | | 0.67 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/24/2017 | | | 1.42 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/18/2017 | | | 0.5 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/13/2017 | | | 0.14 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/30/2016 | | | 0.36 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/18/2016 | | | 0.28 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/17/2016 | | | 0.29 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/12/2016 | | | 0.21 | |

**Appendix 1: NOAA Precipitation Data Since 2015**
**Events Exceeding 0.1 Inch**

| NAME | DATE | DAPR | MDPR | PRCP | WESF |
|------|------|------|------|------|------|
| NEW BALTIMORE 0.2 SE, NY US | 12/7/2016 | | | 0.14 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/1/2016 | | | 0.83 | |
| NEW BALTIMORE 0.2 SE, NY US | 11/30/2016 | | | 0.24 | |
| NEW BALTIMORE 0.2 SE, NY US | 11/21/2016 | | | 0.1 | 0.2 |
| NEW BALTIMORE 0.2 SE, NY US | 11/20/2016 | | | 0.5 | |
| NEW BALTIMORE 0.2 SE, NY US | 11/16/2016 | | | 1.64 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/28/2016 | | | 0.85 | 0.9 |
| NEW BALTIMORE 0.2 SE, NY US | 10/23/2016 | | | 1.27 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/21/2016 | | | 0.44 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/27/2016 | | | 0.38 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/20/2016 | 11 | 1.38 | | |
| NEW BALTIMORE 0.2 SE, NY US | 9/9/2016 | | | 0.15 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/22/2016 | | | 0.52 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/17/2016 | 5 | 0.8 | | |
| NEW BALTIMORE 0.2 SE, NY US | 8/11/2016 | | | 0.38 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/2/2016 | | | 0.87 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/1/2016 | | | 0.54 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/31/2016 | | | 1.54 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/29/2016 | | | 0.13 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/26/2016 | | | 0.18 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/17/2016 | | | 0.12 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/15/2016 | | | 0.17 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/11/2016 | | | 0.23 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/9/2016 | | | 0.22 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/5/2016 | | | 0.26 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/2/2016 | | | 0.14 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/29/2016 | | | 0.73 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/23/2016 | 6 | 0.18 | | |
| NEW BALTIMORE 0.2 SE, NY US | 6/12/2016 | | | 0.92 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/6/2016 | | | 1.01 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/5/2016 | | | 0.4 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/31/2016 | | | 0.49 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/14/2016 | | | 0.43 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/7/2016 | | | 0.23 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/5/2016 | | | 0.17 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/3/2016 | | | 0.39 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/2/2016 | | | 0.28 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/28/2016 | 6 | 0.52 | | |
| NEW BALTIMORE 0.2 SE, NY US | 4/12/2016 | | | 0.14 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/8/2016 | | | 0.44 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/6/2016 | 7 | 0.56 | | |
| NEW BALTIMORE 0.2 SE, NY US | 3/29/2016 | | | 0.28 | |
| NEW BALTIMORE 0.2 SE, NY US | 3/17/2016 | 8 | 0.38 | | |
| NEW BALTIMORE 0.2 SE, NY US | 3/2/2016 | | | 0.18 | |
| NEW BALTIMORE 0.2 SE, NY US | 2/26/2016 | | | 0.42 | |
| NEW BALTIMORE 0.2 SE, NY US | 2/25/2016 | | | 2.54 | |

## Appendix 1:  NOAA Precipitation Data Since 2015
### Events Exceeding 0.1 Inch

| NAME | DATE | DAPR | MDPR | PRCP | WESF |
|------|------|------|------|------|------|
| NEW BALTIMORE 0.2 SE, NY US | 2/17/2016 | | | 0.81 | |
| NEW BALTIMORE 0.2 SE, NY US | 2/16/2016 | | | 0.38 | 0.4 |
| NEW BALTIMORE 0.2 SE, NY US | 2/15/2016 | 8 | 0.11 | | |
| NEW BALTIMORE 0.2 SE, NY US | 2/4/2016 | | | 0.18 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/16/2016 | | | 0.54 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/11/2016 | | | 0.76 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/29/2015 | | | 0.76 | 0.8 |
| NEW BALTIMORE 0.2 SE, NY US | 12/28/2015 | 6 | 0.78 | | |
| NEW BALTIMORE 0.2 SE, NY US | 12/18/2015 | | | 0.25 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/15/2015 | | | 0.39 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/3/2015 | | | 0.3 | |
| NEW BALTIMORE 0.2 SE, NY US | 12/2/2015 | | | 0.29 | |
| NEW BALTIMORE 0.2 SE, NY US | 11/20/2015 | | | 0.52 | |
| NEW BALTIMORE 0.2 SE, NY US | 11/13/2015 | | | 0.12 | |
| NEW BALTIMORE 0.2 SE, NY US | 11/12/2015 | | | 0.12 | |
| NEW BALTIMORE 0.2 SE, NY US | 11/11/2015 | | | 1.2 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/29/2015 | | | 1.68 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/28/2015 | 5 | 0.26 | | |
| NEW BALTIMORE 0.2 SE, NY US | 10/10/2015 | | | 0.2 | |
| NEW BALTIMORE 0.2 SE, NY US | 10/1/2015 | | | 1.68 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/30/2015 | | | 3.42 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/13/2015 | | | 2.41 | |
| NEW BALTIMORE 0.2 SE, NY US | 9/11/2015 | | | 0.76 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/23/2015 | 5 | 0.95 | | |
| NEW BALTIMORE 0.2 SE, NY US | 8/16/2015 | | | 0.23 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/15/2015 | | | 0.23 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/12/2015 | | | 0.52 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/11/2015 | | | 0.53 | |
| NEW BALTIMORE 0.2 SE, NY US | 8/5/2015 | | | 0.39 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/29/2015 | 6 | 0.18 | | |
| NEW BALTIMORE 0.2 SE, NY US | 7/10/2015 | | | 0.81 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/8/2015 | | | 0.15 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/5/2015 | | | 0.23 | |
| NEW BALTIMORE 0.2 SE, NY US | 7/1/2015 | | | 0.77 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/29/2015 | 10 | 2.19 | | |
| NEW BALTIMORE 0.2 SE, NY US | 6/15/2015 | | | 0.98 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/13/2015 | | | 0.37 | |
| NEW BALTIMORE 0.2 SE, NY US | 6/12/2015 | 9 | 1.8 | | |
| NEW BALTIMORE 0.2 SE, NY US | 6/1/2015 | | | 0.43 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/31/2015 | | | 0.3 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/28/2015 | | | 0.42 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/20/2015 | | | 0.3 | |
| NEW BALTIMORE 0.2 SE, NY US | 5/16/2015 | | | 0.11 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/23/2015 | | | 0.13 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/21/2015 | | | 0.54 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/10/2015 | | | 0.39 | |

## Appendix 1:  NOAA Precipitation Data Since 2015
### Events Exceeding 0.1 Inch

| NAME | DATE | DAPR | MDPR | PRCP | WESF |
|------|------|------|------|------|------|
| NEW BALTIMORE 0.2 SE, NY US | 4/9/2015 | | | 0.63 | |
| NEW BALTIMORE 0.2 SE, NY US | 4/4/2015 | | | 0.52 | |
| NEW BALTIMORE 0.2 SE, NY US | 3/27/2015 | | | 0.41 | |
| NEW BALTIMORE 0.2 SE, NY US | 3/4/2015 | | | 0.27 | 0.3 |
| NEW BALTIMORE 0.2 SE, NY US | 2/9/2015 | | | 0.36 | 0.4 |
| NEW BALTIMORE 0.2 SE, NY US | 2/3/2015 | | | 0.38 | 0.4 |
| NEW BALTIMORE 0.2 SE, NY US | 2/2/2015 | | | 0.46 | 0.5 |
| NEW BALTIMORE 0.2 SE, NY US | 1/31/2015 | | | 0.11 | 0.1 |
| NEW BALTIMORE 0.2 SE, NY US | 1/29/2015 | 2 | 0.19 | | |
| NEW BALTIMORE 0.2 SE, NY US | 1/25/2015 | | | 0.12 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/24/2015 | | | 0.03 | 0.3 |
| NEW BALTIMORE 0.2 SE, NY US | 1/19/2015 | | | 1.05 | |
| NEW BALTIMORE 0.2 SE, NY US | 1/9/2015 | | | 0.07 | 0.7 |
| NEW BALTIMORE 0.2 SE, NY US | 1/4/2015 | | | 0.64 | 0.6 |