**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RIVERKEEPER, INC.,**

                                        **Plaintiff,**

        **vs.**                                                   **1:20-CV-1023**
                                                                   **(MAD/DJS)**

**TCI OF NY, LLC; TCI OF NY**
**INTERNATIONAL; BRIAN HEMLOCK,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**SUPER LAW GROUP, LLC**                **EDAN ROTENBERG, ESQ.**
180 Maiden Lane, Suite 603              **JULIA KATHRYN MUENCH, ESQ.**
New York, New York 10038
Attorneys for Plaintiff

**OFFICE OF WILLIAM J. BETTER, P.C.**   **WILLIAM J. BETTER, ESQ.**
1 Albany Avenue
Kinderhook, New York 12106
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, Riverkeeper, Inc., commenced this action on September 1, 2020, alleging that

Defendants violated the Federal Water Pollution Control Act, commonly known as the Clean

Water Act ("CWA").  *See* Dkt. No. 1 at ¶¶ 69–117.  In its complaint, Plaintiff alleges that

Defendants violated CWA §§ 301(a) and 402(p), 33 U.S.C. §§ 1311(a), 1342(p), and the New

York State Department of Environmental Conservation State Pollutant Discharge Elimination

System Multi-Sector General Permit for Stormwater Discharges Associated with Industrial

Activity, Permit No. GP-0-17-004 (March 1, 2018), (hereinafter "General Permit").  *Id*. at ¶¶ 2-3.

On December 5, 2020, Defendants filed a motion to dismiss for lack of subject matter jurisdiction.  Dkt. No. 12.  On January 4, 2021, Plaintiff filed a response with a cross motion to strike Defendants' use of settlement negotiations in their motion.  Dkt. Nos. 13 & 14.  On January 8, 2021, Defendants filed a reply to Plaintiff's motion to dismiss and a response to Plaintiff's motion to strike.  Dkt. No. 15.

As set forth below, Plaintiff's motion to strike is denied and Defendants' motion to dismiss is denied.

## II. BACKGROUND

Plaintiff alleges that Defendants violated CWA §§ 301(a) and 402(p), 33 U.S.C. §§ 1311(a), 1342(p), and the General Permit by failing to maintain and implement an adequate Stormwater Pollution Prevention Plan ("SWPPP") and failing to adhere to adequate stormwater pollution prevention and management practices.  Dkt. No. 1 at ¶ 3.  Plaintiff asserts that Defendants were therefore never eligible for coverage under the General Permit, and thus violated CWA §§ 301(a) and 402(p), 33 U.S.C. §§ 1311(a), 1342(p), and the General Permit by discharging polluted industrial stormwater without authorization under a valid National Pollutant Discharge Elimination System ("NPDES") permit to Coeymans Creek and one of its unnamed tributaries, and from there to the Hudson River.  *Id.*  Plaintiff claims that Defendants' violations occurred at 99 Coeymans Industrial Park Lane, Coeymans, New York 12045 (hereinafter "the Facility") as well as all of Defendants' other industrial sites, specifically the Port of Coeymans (hereinafter "the Port").  *Id.* at ¶¶ 15, 104.

Plaintiff alleges that Defendants exposed and continue to expose industrial pollutants to stormwater, at a minimum, by storing waste materials in uncovered dumpsters; storing transformers, transformer casings and enclosures, and other equipment outdoors; conducting

teardowns or other disassembly of transformers, substations, and other industrial equipment outdoors; storing trucks and other machinery outside or otherwise exposing them to the elements; allowing vehicles to enter and leave the Facility that track pollutants off site; and maintaining and storing machinery and related parts outside. *Id.* at ¶ 51. Plaintiff's complaint asserts that, in carrying out industrial activities, Defendants store and handle materials in a manner that exposes them to precipitation and snowmelt. *Id*. at ¶ 50. Further, Defendants potentially released pollutants including: scrap metal; paint; sediment; plastic; glass; copper, lead, and other metals; oil, PCBs, and hydraulic fluid; and other pollutants of concern by moving, storing, and processing the kinds of waste materials present at Defendants' facility, or conducting repairs on electrical equipment of this kind. *Id.*

On March 17, 2020, Plaintiff provided notice to Defendants of their violations of the CWA and of Plaintiff's intention to file suit against them. *Id.* at ¶ 7. Plaintiff similarly provided notice to the Administrator of the United States Environmental Protection Agency (hereinafter "EPA"); the Administrator of EPA Region II; and the Commissioner of the New York State Department of Environmental Conservation (hereinafter "DEC"), as required by CWA § 505(b)(1)(A), 33 U.S.C. § 1365(b)(1)(A), and the corresponding regulations at 40 C.F.R. §§ 135.1-135.3. *Id.* That same day, Plaintiff sent Defendants a Notice of Intent to Sue Letter via certified mail. *Id*. at ¶ 61. Defendants then submitted a Notice of Intent to obtain coverage under the General Permit to the DEC, which was completed on April 8, 2020 and took effect on May 6, 2020. *Id*. at ¶¶ 62, 64.

Thereafter, Defendants created a SWPPP. Plaintiff, however, asserts that the SWPPP is severely flawed and substantially deficient. *Id*. at ¶ 66. Plaintiff claims the application and the SWPPP itself are missing pertinent information listed in the General Permit requirements. *Id*. As

a result, Plaintiff asserts that Defendants are in violation of the CWA by failing to maintain and

implement adequate stormwater pollution prevention measures at the Facility. *Id.* at ¶ 67.

## III. DISCUSSION

**A.   Plaintiff's Motion to Strike**

On October 5, 2020, Plaintiff filed a motion to strike settlement communications under

Federal Rule of Evidence 408.  Dkt. No. 13.  Plaintiff asserts that Defendants' reference to

settlement negotiations and use of the Settlement Agreement is barred by Federal Rule of

Evidence 408(a).  *Id.* at 1-3.  Defendants claim that Plaintiff's motion is improper and that this

evidence is admissible under the Rule 408(b) "another purpose" exception.  Dkt. No. 15 at 10-14.

As set forth below, Plaintiff's motion is denied.

Rule 12(f) of the Federal Rules of Civil Procedure permits the court to "strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

"To prevail on a motion to strike, the movant must show (1) no evidence in support of the

allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and

(3) permitting the allegations to stand would result in prejudice to the movant." *Jalayer v.

Stigliano*, 420 F. Supp. 3d 58, 64 (E.D.N.Y. 2018).  A court "should not tamper with the

pleadings unless there is a strong reason for so doing." *Lipsky v. Comm. United Corp.*, 551 F.2d

887, 893 (2d Cir. 1976).

Federal Rules of Evidence Rule 408(a) prohibits the introduction of evidence of

"furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a

valuable consideration in compromising or attempting to compromise the claim," as well as

"conduct or a statement made during compromise negotiations about the claim" in order "to prove

or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent

statement or a contradiction."  Thus, Rule 408 "essentially forbids a court from basing adverse findings on a party's concessions in settlement negotiations."  *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 351 (2d Cir. 2009) (citing Fed. R. Evid. 408).

However, "precedent instructs against applying the Federal Rules of Evidence at the pleadings stage, including on motions to strike."  *Westwide Winery, Inc. v. SMT Acquisitions, LLC*, No. 2:19CV4371, 2021 WL 21668, *6 (E.D.N.Y. Jan. 4, 2021) (citing *Ricciuti v. N.Y.C Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).  And, regardless, Rule 408 does not bar the use of this "evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).  "Indeed, cases have found that evidence of a settlement is admissible when it is used to either establish or attack the court's jurisdiction."  *360Heros, Inc. v. Mainstreet Am. Assurance Co.*, No. 5:17CV549, 2019 WL 355333, *2 (N.D.N.Y. Jan. 29, 2019) (citing *National Presort, Inc. v. Bowe Bell & Howell Co.*, 663 F. Supp. 2d 505, 508 (N.D. Tex. 2009); *Utah Reverse Exchange, LLC v. Donado*, No. 14-cv-0408, 2015 WL 419874, *1 (S.D. Ala. Feb. 2, 2015); *Mottley v. Spillan*, No. 2:07-cv-384, 2008 WL 926580, *3 (S.D. Ohio Apr. 3, 2008)).

Defendants offer the settlement agreement and discussions during negotiation to establish that Plaintiff's complaint lacks good faith and that Plaintiff's motivation to bring this action "was motivated by something other than a 'good-faith belief that its allegations were well-grounded in fact,'" as required by Rule 11.  Dkt. No. 15 at 12.  However, as detailed below, Defendants' assertions regarding Plaintiff's good faith are not properly considered at this stage and the remainder of Defendants' jurisdictional assertions are more properly examined pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Therefore, the Court need not the address the

admissibility of this evidence as the Court will limit its review to the complaint.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also GlaxoSmithKline LLC v. Beede*, No. 1:13-CV-00001, 2014 WL 896724, *4 (N.D.N.Y. Mar. 6, 2014) ("Plaintiff moves by letter motion to strike Exhibit 'B' to Defendant's reply memorandum in further support of Defendant's motion to dismiss, or, in the alternative, for leave to supplement the record. ... While the parties dispute whether this evidence is barred from the Court's consideration by Rule 408 of the Federal Rules of Evidence, the Court need not reach this issue as the exhibit is in no way integral to Plaintiff's complaint and thus cannot properly be considered on a Rule 12(b)(6) motion").

Additionally, Defendants do not use this evidence in support of their assertion that Plaintiff failed to comply with 33 U.S.C. § 1365(b), which is properly brought pursuant to Rule 12(b)(1).  Thus, Plaintiff's motion to strike is denied.

**B.**     **Defendants' Motion to Dismiss**

   *1. 33 U.S.C. 1365(a)*

       *a. Standard of Review*

Defendants assert that Plaintiff lacks standing to assert a violation of the CWA because Plaintiff cannot in good faith allege an ongoing violation of the CWA.  Dkt. No. 12-1.  In doing so, Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  *Id.*  However, Rule 12(b)(1) is not the proper vehicle for dismissal.

"Whether a federal court possesses federal-question subject matter jurisdiction and whether a plaintiff can state a claim for relief under a federal statute are two questions that are easily, and often, confused."  *Carlson v. Principal Fin. Grp.*, 320 F.3d 301, 305–06 (2d Cir. 2003) (citing *Montana–Dakota Utilities Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 249 (1951)).  "The cause of this confusion is understandable.  'In federal question cases, the very statute that

creates the cause of action often confers jurisdiction as well—that is, the claim "arises under" the same federal law that gives the plaintiff a cause of action.'" *Id*. at 306 (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

"The jurisdictional inquiry is rather straightforward and depends entirely upon the allegations in the complaint: 'where the complaint ... is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit.'" *Id*. (quoting *Bell v. Hood*, 327 U.S. 678, 681–82 (1946)). "Thus, in order to sustain federal jurisdiction, the complaint must allege a claim that arises under the Constitution or laws of the United States and that is neither made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous." *Id*. "It follows from our exclusive focus on the complaint in determining federal question jurisdiction, moreover, that whether a plaintiff has pled a jurisdiction-conferring claim is a wholly separate issue from whether the complaint adequately states a legally cognizable claim for relief on the merits." *S. New England Tel. Co. v. Glob. NAPs Inc*., 624 F.3d 123, 132 (2d Cir. 2010).

While Defendants may question the motives of Plaintiff in bringing this suit, there is plainly no evidence, and Defendants do not present any, that Plaintiff's CWA allegations were made solely for the purpose of obtaining jurisdiction or that they are wholly insubstantial and frivolous. Dkt. No. 12-1 at 16-17. Rather, Defendants assert that Plaintiff cannot establish any pollutants discharged by Defendants and therefore that Plaintiff's claim as a whole is in bad faith and frivolous. *Id*. at 7-13. This, however, goes to the merits of Plaintiff's claim and is based on facts not within the complaint. As the Second Circuit has stated, this "is relevant only to whether the plaintiff can make out a successful claim for relief, and not to whether the court has original jurisdiction over the claim itself." *S. New England Tel.*, 624 F.3d at 132. The issue of whether

7

Defendants potentially discharged pollutants is undoubtably an issue under the CWA, *i.e.*, a claim under a federal statute that the Court has original jurisdiction over.

However, in the interest of fully developing the record, the Court will examine the remainder of Defendants' 33 U.S.C. § 1365(a) assertions pursuant to the Rule 12(b)(6) standard.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc.*, 493 F.3d at 98 (citation omitted).  This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w]' that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."''" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).

Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims

across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### b. Rule 11 Good-Faith

Defendants assert that Plaintiff's action must be dismissed because Plaintiff's complaint

lacks good faith.  Dkt. No. 12-1 at 8-13.  However, Defendants' motion is procedurally improper

and must be denied.

"[A]ny citizen may commence a civil action on his own behalf ... against any person ...

who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B)

an order issued by the Administrator or a State with respect to such a standard or limitation."  33

U.S.C. § 1365(a)(1).  While the CWA "does not permit citizen suits for wholly past violations, ...

[t]he statute does not require that a defendant 'be in violation' of the Act at the commencement of

suit; rather, the statute requires that a defendant be 'alleged to be in violation.'"  *Gwaltney of*

*Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987) (quoting 33 U.S.C. §

1365(a)(1)).

The fact that "Congress intended a good-faith allegation to suffice for jurisdictional

purposes, however, does not give litigants license to flood the courts with suits premised on

baseless allegations."  *Id*. at 65.  "Rule 11 of the Federal Rules of Civil Procedure, which requires

pleadings to be based on a good-faith belief, formed after reasonable inquiry, that they are 'well

grounded in fact,' adequately protects defendants from frivolous allegations."  *Id*.

"In considering a motion to dismiss for failure to state a claim, a district court must limit

itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). "Courts following *Gwaltney* have found that summary judgment is the proper procedural vehicle for challenging the veracity of ongoing violation allegations." *Woodward v. Goodwin*, No. C 99-1103, 2000 WL 694102, *7 (N.D. Cal. May 12, 2000). "Good faith allegations, it is true, will defeat a motion to dismiss on the pleadings for lack of subject matter jurisdiction." *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305, 1312 (2d Cir. 1993).

Whether the allegations in Plaintiff's complaint were made in good faith is more appropriately determined on summary judgment. In *Connecticut Coastal Fishermen's Ass'n*, the Second Circuit stated that a good faith allegation will defeat a motion to dismiss. *Id*. The court did not state whether the allegations were considered to be made in good faith, *per se*, at this stage but stated that at summary judgment the plaintiff "must present instead evidence from which a factfinder could find a likelihood of continuing violations." *Id*.

Clearly, however, at the motion to dismiss stage, the Court is required to accept the allegations in the complaint as true and is not permitted to look to information outside of the complaint. *ATSI Commc'ns, Inc.*, 493 F.3d at 98; *Hayden*, 180 F.3d at 54. Based on these principals, courts have found that at the motion to dismiss stage a court will not look beyond the complaint to probe deeper into whether the allegations were made in good faith. *Woodward*, 2000 WL 694102, at *13 ("[T]he Supreme Court found that good-faith allegations of *inter alia* [an] ongoing violation was sufficient under the CWA to state a claim, and that the veracity of such claims could be challenged after discovery"); *Jones Creek Inv'rs, LLC v. Columbia Cty., Ga.*, No. CV 1:11-74, 2013 WL 1338238, *8 (S.D. Ga. Mar. 28, 2013) (holding that a court is

obligated to accept the plaintiff's assertions as true and, therefore, denying the defendant's motion to dismiss on the ground that the claim was made in bad faith).

In *Woodward*, the court held that there was a "presumption of good faith" and declined further discussion of whether the plaintiff's claims were made in good faith until after discovery. *Woodward*, 2000 WL 694102, at *13. Even the Supreme Court contemplated in *Gwaltney* that such a challenge would be made at summary judgment. *Gwaltney*, 484 U.S. at 65-66 ("Petitioner, however, fails to recognize that our standing cases uniformly recognize that allegations of injury are sufficient to invoke the jurisdiction of a court. In *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975), for example, we made clear that a suit will not be dismissed for lack of standing if there are sufficient 'allegations of fact'—not proof—in the complaint or supporting affidavits. This is not to say, however, that such allegations may not be challenged. In *United States v. SCRAP*, 412 U.S. 669, 689, 93 S. Ct. 2405, 2417, 37 L. Ed. 2d 254 (1973), we noted that if the plaintiffs' 'allegations [of standing] were in fact untrue, then the [defendants] should have moved for summary judgment on the standing issue and demonstrated to the District Court that the allegations were sham and raised no genuine issue of fact'").

Defendants' motion to dismiss for a lack of good faith is premature and is therefore denied.

### c. Adequacy of the Allegations in Complaint

"Congress passed the Clean Water Act in 1972 to 'restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'" *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 602 (2013) (quoting 33 U.S.C. § 1251(a)). "A central provision of the Act is its requirement that individuals, corporations, and governments secure National Pollutant Discharge Elimination System (NPDES) permits before discharging pollution from any point source into the

navigable waters of the United States." *Id*. (citations omitted).  "To that end, Section 301(a) of the CWA prohibits anyone from discharging any pollutant, '[e]xcept as in compliance with' particular sections of the Act, including 33 U.S.C. § 1342. ...  Outside of these allowances, 'the discharge of any pollutant by any person shall be unlawful.'" *Soundkeeper, Inc. v. A & B Auto Salvage, Inc*., 19 F. Supp. 3d 426, 431 (D. Conn. 2014) (quoting *Decker*, 568 U.S. at 601) (internal citation omitted).

"[T]he term 'effluent standard' as defined by Section 505 encompasses any violation of the strict prohibition contained in Section 301 of the CWA ... on discharges without an appropriate permit." *Id*.  "The term 'effluent standard' for purposes of Section 505 also specifically encompasses allegations of the discharge of pollutants without a Section 402 permit." *Id*.

Plaintiff's complaint asserts that Defendants violated CWA §§ 301(a) and 402(p), 33 U.S.C. §§ 1311(a) and 1342(p), and the General Permit by failing to maintain and implement an adequate SWPPP and by failing to adhere to adequate stormwater pollution prevention and management practices.  Dkt. No. 1 at ¶ 3.  Additionally, Plaintiff alleges that, because Defendants were never eligible for coverage under the General Permit as they have not implemented an adequate SWPPP and stormwater pollution prevention and management practices, Defendants further violated these sections by discharging polluted industrial stormwater without authorization under a valid NPDES permit to Coeymans Creek and one of its unnamed tributaries, and from there to the Hudson River.  *Id*. at ¶¶ 3, 69-117.

Defendants assert that Plaintiff's complaint must be dismissed because it fails to identify the pollutants discharged by Defendants and because NYSDEC granted coverage under the MSGP, and subsequent to Plaintiff filing this action, conducted a site evaluation and determined that Defendants were in compliance with the permit.  Dkt. No. 12-1 at 11.  Plaintiff argues that

stormwater discharged from an industrial site is *per se* a pollutant and that it is immaterial that the NYSDEC issued Defendants a permit.  Dkt. No. 14 at 20-21.

### d. Pollutants

Plaintiff's complaint asserts that in carrying out industrial activities, Defendants store and handle materials in a manner that exposes them to precipitation and snowmelt.  Dkt. No. 1 at ¶ 50. Further, Defendants may have released pollutants including: scrap metal; paint; sediment; plastic; glass; copper, lead, and other metals; oil, PCBs, and hydraulic fluid; and other pollutants of concern by moving, storing, and processing the kinds of waste materials present at Defendants' facility, or conducting repairs on electrical equipment of this kind.  *Id.*  While Plaintiff's complaint speculates that Defendants are discharging pollutants, it fails to allege any pollutant actually being discharged.  Plaintiff, however, claims that the stormwater discharge itself is a pollutant and by alleging that Defendants have discharged stormwater without a SWPPP, Plaintiff has sufficiently pled a CWA violation.  Dkt. No. 14 at 21.

Multiple courts have held that stormwater runoff is a pollutant *per se*.  *N. Carolina Shellfish Growers Ass'n v. Holly Ridge Assocs., LLC.*, 278 F. Supp. 2d 654 (E.D.N.C. 2003) ("Stormwater collected and conveyed by ditches on the Morris Landing Tract therefore qualifies as a pollutant under the CWA"); *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1304 (9th Cir. 1992) ("It is not necessary that storm water be contaminated or come into direct contact with pollutants; only association with any type of industrial activity is necessary"); *CARS (Citizens Against Retail Sprawl) v. U.S. Army Corps of Engineers*, No. 04-CV-328, 2005 WL 3534178, *5 (W.D.N.Y. Dec. 23, 2005) (holding that stormwater runoff is regulated by the CWA and failure to comply with a SWPPP by discharging stormwater runoff is a violation of the CWA); *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 157 (S.D.N.Y. 2010) ("The Complaint

alleges that the discharge of stormwater runoff at the Development violates the applicable SPDES permit because it causes the turbidity of Brown's Pond to rise above permissible levels. ... Accordingly, the Court has little trouble concluding that Plaintiff's CWA claim meets Rule 8(a)'s pleading standard"); *Eden Envtl. Citizen's Grp., LLC v. Am. Custom Marble, Inc*., No. 19-CV-03424, 2020 WL 733167, *2 (N.D. Cal. Feb. 13, 2020) ("Section 402 of the Act[ ] allows stormwater discharges that are authorized by and comply with the terms of a National Pollutant Discharge Elimination System ('NPDES') permit").

While Defendants assert that the Court should apply the holding of *Catskill*, that case is distinguishable from the present issue.  In *Catskill*, the Second Circuit examined whether the plaintiff had provided the defendants with adequate notice of its violations prior to bringing suit. *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York*, 273 F.3d 481, 486-89 (2d Cir. 2001).  The plaintiff's "complaint as filed alleged discharges of 'a high level of turbidity,' 'suspended solids,' and 'elevated temperatures.'  Yet the notice of intent to sue letter stated only that the City has discharged 'pollutants in the form of Total Suspended Solids and Settleable Solids into the Esopus Creek.'"  *Id*. at 486.  The Second Circuit stated that the purpose of the notice requirement of Section 1365(b) was for the defendants to avoid costly litigation by giving the defendants an opportunity to correct any current violations.  *Id*. at 488.  The Second Circuit determined that each pollutant represents a distinct violation of the CWA and, therefore, Section 1365(b) requires the plaintiff to provide the defendant with sufficient notice of each violation.  *Id*. Regarding the sufficiency of the description of the pollutants, the court took issue with the change in named pollutants as the notice failed to allege all violations that were asserted in the complaint and thus allow the defendants to correct the violations and avoid litigation.  *Id*. at 488-89.

Applying *Catskill* here would undoubtably limit the violations Plaintiff could claim to

stormwater discharge and other allegations in the Notice of the Intent to Sue Letter, but it has no bearing on the ultimate issue of whether stormwater discharge is a pollutant itself. Therefore, Defendants' motion to dismiss Plaintiff's complaint for failure to name a pollutant is denied.

### e. NYSDEC

Defendants assert that Plaintiff's complaint must be dismissed because the NYSDEC communicated to Plaintiff that it had accepted Defendant TCI's Notice of Intent, reviewed its SWPPP and found it acceptable; granted Defendants an MSGP, effective May 6, 2020, and that the NYSDEC would be conducting a site inspection to ensure Defendants' compliance with the MSGP. Dkt. No. 12-1 at 10. However, Defendants fail to present any caselaw supporting this assertion.

The facts present in *Am. Custom Marble* are almost identical to those here. In *Am. Custom Marble*, the plaintiffs asserted that the defendants discharged stormwater in violation of the CWA. *Am. Custom Marble*, 2020 WL 733167, at *9. The defendants claimed that "'[o]n May 8, 2019, the Water Board conducted an inspection of the facility. The inspector determined that there were "No" violations and recommended "No Further Action" by ACM.'" *Id*. at *8. "In addition, at the hearing on the Motion to Dismiss, Defendants indicated that they had recently received a 'No Exposure Certificate' from the State." *Id*. Denying the defendants' motion to dismiss, the court held that

> [a]bsent an express bar, courts should permit such cases to move forward because "neither the text of the Act nor its legislative history expressly grants to the EPA or such a state agency the *exclusive* authority to decide whether the release of a substance into the waters of the United States violates the Clean Water Act."
> Thus, the issuance of the No Exposure Certificate does not prohibit Plaintiff from asserting its claims in this suit.

*Id*. (quoting *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc*., 299 F.3d 1007, 1012 (9th Cir. 2002)).

The holding out of the Northern District of California is not inconsistent with case law in this Circuit which has examined the sufficiency of an SWPPP granted to defendants. *See City of New York v. Anglebrook Ltd. P'ship*, 891 F. Supp. 900, 916 (S.D.N.Y. 1995). Additionally, other courts have held that the issuance of a new permit does not render a plaintiff's claims moot. *See Puget Soundkeeper All. v. APM Terminals Tacoma, LLC*, No. 17-cv-5016, 2018 WL 2560995, *7 (W.D. Wash. June 4, 2018) ("The fact that the Port has been issued a new permit number may bear on the Court's analysis of the above-mentioned considerations when evaluating the Port's conduct under the newly issued permit number, but the mere issuance of the new permit number cannot render PSA's claims moot on its own"); *Nat. Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.*, 719 F. Supp. 281, 290 (D. Del. 1989), *order vacated in part sub nom. on other grounds*, *Nat. Res. Def. Council v. Texaco Ref. & Mktg., Inc.*, 906 F.2d 934 (3d Cir. 1990) ("[W]here the limits contained in a superceded permit are incorporated into or made more strict in the new permit, there is no reason to allow a defendant to avoid enforcement of those limits").

Therefore, Defendants' assertion that Plaintiff's complaint must be dismissed because Defendants were granted an MSGP and because the NYSDEC failed to find any violations upon a site inspection is incorrect and must be denied.

### 2. 33 U.S.C. § 1365(b)

#### a. Standard of Review

Defendants claim that Plaintiff lacks standing to assert a violation of the CWA because Plaintiff failed to properly comply with the notice requirement of the CWA, 33 U.S.C. § 1365(b). Dkt. No. 12-1 at 13-16. Defendants move to dismiss pursuant to Rule 12(b)(1). *Id.* As Defendants' assertions relate to Plaintiff's compliance with Section 1365(b) and, thus, Plaintiff's standing, Defendants' motion is properly brought pursuant to Rule 12(b)(1). *See Carter*, 822 F.3d

at 56.

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Id*. When considering a facial challenge, a court must determine whether the pleading "'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Id*. (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)) (other citations omitted). For purposes of a facial challenge, a court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff asserting jurisdiction. *Id*. (citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008); *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). "Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Id*. (citing *Amidax*, 671 F.3d at 145). "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion ... reveal the existence of factual problems' in the assertion of jurisdiction." *Id*. (quoting *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

Defendants have not submitted any additional evidence to challenge the adequacy of Plaintiff's compliance with Section 1365(b) other than an affidavit from Plaintiff's counsel, which simply reiterates what was stated in the Notice of Intent to Sue Letter and complaint. Dkt. No. 12-1 at 13-16. Defendants' challenge is therefore a facial challenge rather than a fact based one. *See Carter*, 822 F.3d at 56. As such, the Court reviews only the well-pled factual allegations in the complaint, which are accepted as true for purposes of this motion. *Id*.

### b. Notice of SWPPP violations

Under the CWA, "[n]o action may be commenced ... under subsection (a)(2) of this

section prior to sixty days after the plaintiff has given notice of such action to the Administrator." 33 U.S.C. § 1365(b).  "The CWA does not describe the content of the required notice, but directs that '[n]otice ... shall be given in such manner as the Administrator shall prescribe by regulation.' 33 U.S.C. § 1365(b).  The EPA has adopted such regulations. ..."  *Catskill*, 273 F.3d at 487.  "The notice and 60–day delay requirements allow a potential defendant to identify its own violations and bring itself into compliance voluntarily, thus making a costly lawsuit unnecessary."  *Id*. at 488.

"'In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit. ... The key to notice is to give the accused company the opportunity to correct the problem.'"  *Id*. (quoting *Atl. States Legal Found., Inc. v. Stroh Die Casting Co*., 116 F.3d 814, 819–20 (7th Cir. 1997)).  "Therefore, the key issue in determining whether a notice letter is defective is whether it 'gave Defendant adequate notice of all the claims over which the district court exercised jurisdiction' when the letter was received."  *Puget Soundkeeper All.*, 2018 WL 2560995, at *6 (quoting *Nat. Res. Def. Council v. Sw. Marine, Inc*., 236 F.3d 985, 997 (9th Cir. 2000)).

Defendants assert that while Plaintiff raises claims regarding the sufficiency of the SWPPP, Plaintiff failed to provide appropriate notice of those claims under Section 1365(b).  Dkt. No. 12-1 at 13.  Plaintiff claims that it was not required to allege specific deficiencies in the SWPPP because the Notice of Intent to Sue Letter was drafted prior to Defendants creating a SWPPP and that they further were not required to draft a new Notice of Intent to Sue Letter for the subsequent SWPPP.  Dkt. No. 14 at 11-12.  As set forth below, the Court agrees with Plaintiff.

Claims in a notice letter alleging deficiencies in the first SWPPP provide sufficient notice where a new SWPPP is issued that is essentially identical to the first one.  *See Anglebrook*, 891 F.

Supp. at 914-16.  However, the law is less than clear as to whether a plaintiff must file a second

notice of intent to sue letter where the defendant attempted to cure the violation.  The Ninth

Circuit has held that a plaintiff is "not required to send a second notice letter in order to pursue

specific claims regarding the inadequacies of [the defendant's] post-notice compliance efforts."

*Waterkeepers N. California v. AG Indus. Mfg., Inc*., 375 F.3d 913, 920 (9th Cir. 2004) (citing *Sw.*

*Marine, Inc*., 236 F.3d at 997).

       In *AG Industries*, the defendant had "filed a notice of intent to comply with the General

Permit and ... prepared an SWPPP and a monitoring plan in July 2000, after receiving [the

plaintiff's] notice letter but before [the plaintiff's] filed its complaint."  *Id*.  In reversing the district

court's order granting the defendant summary judgment, the Ninth Circuit based its holding on

*Sw. Marine*, which held that,

> [i]f a defendant receives a proper notice letter alleging that it has
> failed to prepare and implement an adequate plan and, in response,
> prepares a new plan and begins to implement it before the
> complaint is filed, is the otherwise proper notice letter defective for
> failing to identify and discuss the new plan and its implementation?
> In those circumstances, must a citizen-plaintiff send a new notice
> letter?  We think not.

*Sw. Marine, Inc*., 236 F.3d at 997.  However, in *Sw. Marine*, the defendant was already operating

pursuant to an SWPPP and merely revised its SWPPP after receiving the plaintiff's notice of

intent to sue letter.  *Id*.  Indeed, both times the Ninth Circuit stated that "'[a]lthough we require

strict compliance with the [Act]'s notice requirement, we do not require citizen-plaintiffs to refer

to provisions of plans that do not exist.'"  *AG Indus. Mfg*., 375 F.3d at 920 (quoting *Sw. Marine,*

*Inc*., 236 F.3d at 997).

       In *Catskill*, the Second Circuit held that a notice of intent to sue letter must specifically

allege each violation for which the plaintiff intends to bring suit so as to allow the defendant an

opportunity to fix the violation and avoid litigation.  *See Catskill*, 273 F.3d at 487-88.  However,

in *Catskill*, the Second Circuit was presented with an issue of pollutant discharge and noted that

each pollutant discharged in violation of the CWA must be set forth in the notice of intent.  *Id*.

Therefore, to adequately put the defendant on notice, the plaintiff was required to name each

pollutant that was discharged in violation of the CWA.  *Id*.

        Here, Plaintiff's Notice of Intent to Sue Letter stated as follows:

> Before submitting a registration form, TCI must prepare, make
> available, and implement a Stormwater Pollution Prevention Plan
> ("SWPPP") in accordance with schedules established in the General
> Permit.  The SWPPP must identify potential sources of pollution
> that may affect the quality of stormwater discharges associated with
> industrial activity.  Further, the SWPPP must describe and ensure
> the implementation of practices that minimize the discharge of
> pollutants in these discharges and that assure compliance with the
> other terms and conditions of the General Permit, including
> achievement of effluent limitations.
>
> Among other things, the SWPPP must include: a general site
> description, a general location map identifying the location of the
> facility and all receiving waters to which stormwater discharges,
> information related to a company stormwater pollution prevention
> team, a summary of potential pollutant sources, a description of
> control measures and best management practices, and schedules and
> procedures for implementation of control measures, monitoring and
> inspections.

Dkt. No. 12-5 at 6-7.

        Plaintiff's complaint asserts that,

> [t]he Facility's SWPPP is severely flawed and substantially
> deficient.  Among other things, the SWPPP fails to: (1) describe the
> path of stormwater from all sheet flow, drains, culverts, and outfalls
> to receiving waterbodies, including Coeymans Creek and its
> tributaries; (2) adequately protect the receiving waterbodies, which
> are identified as federally protected riverine wetlands; (3) identify
> all discharge locations; (4) include and implement specific non-
> numeric technology-based effluent limits (best management
> practices and stormwater controls); (5) provide an adequate site
> map; (6) include a schedule for completion of proposed stormwater
> control structures included on the site map; or (7) provide an
> adequate spill containment and cleanup plan and associated training
> for employees.

20

Dkt. No. 1 at ¶ 66.

The allegations in Plaintiff's complaint, now grounded in specific violations by Defendants' newly created SWPPP, are of course more detailed.  However, the substance of these alleged violations was present in their Notice of Intent to Sue Letter.  Indeed, each of these alleged violations existed at the time of Plaintiff's letter because Defendants lacked a SWPPP.  By implementing a SWPPP, Defendants may have cured some of the alleged violations and not others.  Regardless, Plaintiff's Notice of Intent to Sue Letter clearly set forth why Defendants were violating the CWA and how to come into compliance.  Further, it established that if Defendants did not incorporate all the requirements of the CWA into their SWPPP, Plaintiff would bring an action in federal court.  Plaintiff's complaint now lists the violations that Defendants failed to cure upon implementing their SWPPP.

Here, Plaintiff's notice letter provided Defendants with adequate notice of the claims in the complaint, *i.e.*, that Defendants failed to implement a SWPPP that complied with the General Permit.  *Puget Soundkeeper All.*, 2018 WL 2560995, at *6 (quoting *Sw. Marine, Inc*., 236 F.3d at 997).  Thus, Plaintiff was not required to update its Notice of Intent to Sue letter as the violation present at the time the letter was served was still ongoing and pleading this violation merely changed in form rather than substance.  *See Sw. Marine, Inc*., 236 F.3d at 997.

Therefore, Defendants' motion to dismiss for failure to comply with Section 1365(b) by failing to submit a second notice of intent to sue letter regarding Defendants' SWPPP is denied.

### c. *Notice of Activities at the Port of Coeymans*

Defendants assert that Plaintiff did not provide sufficient notice for the violations Plaintiff allegedly made at the Port by failing to name the location specifically.  Dkt. No. 12-1 at 15-16.  Plaintiff claims that the Notice of Intent to Sue Letter does not require it to identify the location

specifically but only a reasonably specific description of where the violation occurred.  Dkt. No.

14 at 13.

"Notice regarding an alleged violation of an effluent standard or limitation or of an order

with respect thereto, shall include sufficient information to permit the recipient to identify the ...

the location of the alleged violation. ..."  40 C.F.R. § 135.3(a).  "'[T]he Clean Water Act's notice

provisions and their enforcing regulations require no more than "reasonable specificity."'"  *San*

*Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002) (quoting *Catskill*,

273 F.3d at 488); *see also Paolino v. JF Realty, LLC*, 710 F.3d 31, 38 (1st Cir. 2013).  Where the

"suit is about the failure to prepare environmental compliance and monitoring plans for an entire

facility ... it is legitimate to allege that the violations are occurring at the facility in general,

because the facility has not implemented the proper CWA plans."  *Nat. Res. Def. Council, Inc. v.*

*Sw. Marine, Inc.*, 945 F. Supp. 1330, 1333 (S.D. Cal. 1996).  Additionally, "the letter adequately

describes the location of the alleged violation [where] the violations are within the SWPPP itself."

*Anglebrook*, 891 F. Supp. at 908.

Plaintiff's Notice of Intent to Sue Letter states as follows:

> Riverkeeper intends to take legal action because TCI is discharging
> polluted stormwater from its recycling of electrical transformers,
> substation dismantling, used oil collection and related activities at
> an industrial park near the Hudson River a few dozen miles south of
> Albany ("the Facility"), to the waters of the United States, via the
> separate storm sewer system, without a permit.

Dkt. No. 12-5 at 1.  Plaintiff's complaint asserts violations for "Defendants' industrial activities at

the Facility and nearby, in areas of the port."  Dkt. No. 1 at ¶ 48.

Defendants assert that because the Notice of Intent to Sue Letter does not describe the

location of the Port under the "Location of the Alleged Violation" section, it failed to provide

Defendants with notice that Plaintiff intended to sue for violations at this site.  Dkt. No. 12-1 at

15-16.  Defendants claim that Plaintiff's description on page one was insufficient to allow

Defendants to infer that Plaintiff was asserting violations at the Port because Defendants had not

used the Port location in the past three years.  Dkt. No. 15 at 6.

In the violation letter dated March 18, 2020, Plaintiff specifically states that the alleged

violations occurred at the "Facility," which is located at 99 Coeymans Industrial Park Lane,

Coeymans, New York 12045.  *See* Dkt. No. 12-5 at 1-2.  Nothing in Plaintiff's letter indicates that

Defendants were engaged in industrial activity at the Port of Coeymans or that any of the alleged

violations occurred at the Port.  *See id.* at 1-23.

In its complaint and response to the pending motion, Plaintiff alleges, among other things,

that Defendants' SWPPP should have included "transformer teardowns at the Port of Coeymans."

Dkt. No. 14 at 13.  The Port of Coeymans, however, is an entirely different location than the

"Facility" as defined in the notice of violation letter.  Further, according to Defendants, they only

used the Port of Coeymans for a brief period in 2017 as a novel solution to a one-time logistical

challenge.  *See* Dkt. No. 15 at 6.  Defendants have not engaged in any industrial activities at the

Port since 2017.  *See id.*

Since the Port of Coeymans is a geographically distinct location from the "Facility," which

was last used by Defendants three-years prior to Plaintiff's violation letter, it is clear that Plaintiff

failed to provide Defendants adequate notice that their SWPPP should include portions of the Port

of Coeymans.  *See ONRC Action v. Columbia Plywood, Inc.*, 286 F.3d 1137, 1143 (9th Cir. 2002)

(holding that the defendant "was not required to speculate as to all possible attacks on its NPDES

permit that might be added to a citizen suit when the 60-day notice so specifically identified only

one attack based upon timeliness of the renewal application").  Accordingly, the Court grants

Defendants' motion insofar as it seeks dismissal of the CWA claim relating to the Port.[1]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's Motion to Strike (Dkt. Nos. 13, 14) is **DENIED**; and the Court further

**ORDERS** that Defendants' Motion to Dismiss (Dkt. No. 12) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 8, 2021
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[1] The Court also notes that allegations regarding alleged violations at the Port of Coeymans are also likely subject to dismissal because the CWA permits lawsuits to be brought to address (1) continuing violations of the CWA or (2) violations that are likely to occur in the future.  *See Puerto Rico Campers' Ass'n v. Puerto Rico Aqueduct & Sewer Auth.*, 219 F. Supp. 2d 201, 216 (D.P.R. 2002) (citing *Chesapeake Bay Found. V. Gwaltney of Smithfield*, 890 F.2d 690, 693 (4th Cir. 1989)).  Since the alleged violations at the Port of Coeymans occurred three years before this action was commenced and, based on Defendants' representations, are unlikely to occur in the future, the allegations relating to the Port of Coeymans would fail to meet the jurisdictional requirement of Section 1365(a).  *See id.*